Roger N. Heller (State Bar No. 215348)
rheller@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Fax: 415.956.1008

E. Adam Webb (*pro hac vice forthcoming*)
Adam@WebbLLC.com
G. Franklin Lemond, Jr. (*pro hac vice forthcoming*)
Franklin@WebbLLC.com
WEBB, KLASE & LEMOND, LLC
1900 The Exchange S.E., Suite 480
Atlanta, GA 30339
Telephone: 770.444.0773
Fax: 770.217.9950

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| THE STRATFORD COMPANY, LLC, on behalf of itself and all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>               Defendant. | Case No.   5:22-cv-4547<br><br>**CLASS ACTION COMPLAINT**<br><br>**CLASS ACTION**<br><br>**(1) BREACH OF CONTRACT;**<br>**(2) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**(3) UNJUST ENRICHMENT / QUASI-CONTRACT;**<br>**(4) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200.**<br><br>**DEMAND FOR JURY TRIAL** |

2442414.3

On behalf of itself and all persons or entities similarly situated, Plaintiff The Stratford Company, LLC submits this Class Action Complaint against Google LLC ("Google") alleging as follows:

## I. **INTRODUCTION**

1.      This case challenges a systemic breach by Google of its promise to provide Plaintiff and other early adopters of Google Workspace with continuing free access to that service.  Google made this promise in order to entice early adopter customers to sign up so that Google could then benefit from these customers' experiences and use of the service to develop and fine-tune the service, thus putting Google in a position to market the service to other customers for a fee.  Google promised Plaintiff and the proposed Class of early adopters (including an express promise in Google's form written contracts with these customers) that Google would continue to provide them with a free version of Workspace as long as Google offered the Workspace service.  Google breached that promise in 2022.  Google continued to offer the Workspace service to these customers and others but stopped honoring its promise to provide Plaintiff and the proposed Class with a free version of the service.

2.      Google forced Plaintiff and other customers whom Google had promised continuing free Workspace service to choose between: (a) paying for service; or else (b) having their Workspace service suspended, depriving them of this valuable and contractually-based benefit and requiring them to transfer to another service and risk losing valuable data they stored on Google's systems as part of the service.

3.      By this action, Plaintiff, on behalf of itself and all others similarly situated, seeks, *inter alia*, damages and restitution—including for amounts paid by Plaintiff and the Class for the Workspace service and for the value of the free service these customers were contractually

entitled to and are now being denied—and an order requiring specific performance and requiring Google to stop its breaches and to restore free Workspace service for Plaintiff and the Class.

**II.      PARTIES**

4.      Plaintiff is a Washington-based limited liability company in the real estate development and management business.  All members of Plaintiff are residents and citizens of the State of Washington.  Plaintiff signed up for Workspace in 2008 as a free-for-life customer.

5.      Defendant Google LLC is a California limited liability company.  It was previously known as BackRub, Inc., then Google, Inc., before becoming Google LLC.  Google is a subsidiary of Alphabet, Inc. and Google itself has numerous subsidiaries.

**III.     JURISDICTION**

6.      This Court has jurisdiction over the subject matter presented in this Class Action Complaint pursuant to 28 U.S.C. § 1332(d)(2), because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), which explicitly provides for the original jurisdiction of the federal courts of any class action in which any member of the class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000, exclusive of interest and costs.

7.      Plaintiff alleges that the total claims of members of the proposed Class in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6).  Plaintiff is a citizen of Washington, whereas Defendant is a citizen of California for purposes of diversity.  The proposed Class will include consumers from dozens of states.  Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).  Furthermore, most of the members of the proposed Class are citizens of a state

- 3 -

other than California, where this action is being filed, and the total number of members of the proposed Class is greater than 100. 28 U.S.C. § 1332(d)(5)(B).

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction here and regularly conducts business in this District.  Defendant is headquartered in Mountain View, California, which is in this District.  Further, a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this District.  Lastly, Defendant consents to venue in this Court pursuant to its form contract.

9.      <u>Divisional Assignment</u>.  This action is properly assigned to the San Jose Division. Defendant is headquartered in Santa Clara County.  N.D. Cal. Civil Local Rule 3-2(e).

## IV.      **FACTUAL ALLEGATIONS**

### A.      **Google Makes and Breaks Its Free-For-Life Promise to Early Adopters of Google Workspace.**

10.      Google Workspace (formerly known as Google Apps and later G Suite) is a "suite" (or collection) of cloud computing, productivity, and collaboration tools, software, and products developed and marketed by Google.  It consists, or has consisted, of services that include Gmail, Contacts, Calendar, Meet, and Chat for communication; Currents for employee engagement; Drive for storage; the Google Docs suite for content creation; and other features. An "Admin Panel" is provided for managing users and services.

11.      While some of these services are individually available at no cost to consumers who use a free Google Gmail account, Google Workspace adds enterprise features such as custom email addresses at a domain (e.g., @yourcompany.com), shared Google Drive storage, additional administrative tools and advanced settings, as well as 24/7 phone and email support.

12.      One substantial benefit for Workspace customers is access to Google's data centers, where data and information are saved directly and then synchronized to other data centers

- 4 -

for backup purposes.  Unlike other consumer-facing services, Google Workspace users are not subjected to advertisements while using the services.  Furthermore, customers using Google Workspace can fine-tune security and privacy settings.

13.     The suite currently known as Workspace was first launched by Google in February 2006, taking on the name "Google Apps" in 2006.  The service was later rebranded as "G Suite" in 2016.  In 2020, the service was rebranded again as "Google Workspace."  The name "Google Workspace" is still being utilized.  Unless specifically referring to the name at a specific point in time, the term "Google Workspace" or "Workspace" is used herein to refer to the program generally even if describing the period prior to 2020.

14.     From 2006 until 2012, in order to convince potential users to leave well-developed suites of services offered by Google's competitors (e.g., Microsoft Office), Google made a promise to early adopters of Google Workspace.  Google promised that such users would always be provided a free version of Workspace (including at least the features that the service had when these customers signed up) as long as Google offered the Workspace service.  This promise, which was expressly included in Google's form contracts with Plaintiff and the other early adopters comprising the proposed Class, was very appealing and successfully enticed Plaintiff and thousands of other individuals and businesses to take a leap of faith and start using Google's service.  This continuing free service commitment by Google is referred to hereinafter as the "free-for-life promise" and the early adopters of Workspace are sometimes referred to herein as "free-for-life customers."

15.     As was to be expected, Workspace suffered from many defects and gaps during the early years.  For example, the word processing and spreadsheet products lacked many features that customers had become accustomed to with Microsoft.  Early adopter customers worked with

Google to correct problems and perfect the service.  Indeed, Google made its free-for-life promise to the early adopters because Google wanted to entice as many early adopters to sign up as possible, so that Google could use these customers' experiences and their use of the Workspace service to help remove the kinks and refine a service Google could then market to other customers for a fee.  There were other benefits to Google.  For example, signing up these users allowed Google to entice customers away from Microsoft and other competitors, after which Google hoped to establish long-term brand loyalty/relationships with such customers. Google also received benefits from these users via Google's collection and use of their personal and business data.

16.     By 2012, with the active assistance of the early adopters, the service was professional enough to market to businesses, schools, and other organizations and individuals as a paid service.  Beginning in January of 2012, all *new* customers signing up for Workspace were required to pay for the service.  Paid customers pay a monthly fee per user, such as $12 per employee/user, for a basic version of Workspace.  Until recently, however, Google had never mentioned breaking the free-for-life promise made to the early adopters of Workspace.

17.     At the time of the rebranding to "Google Workspace," G Suite had approximately six million paying business customers, 120 million "G Suite for Education" users who enjoy benefits through group accounts paid for by schools and colleges, and at least tens of thousands of "legacy" free-for-life customers that continued to use a free version of the service.  The exact number of free-for-life customers is not known, but is at least in the thousands.

18.     In January 2022, Google announced to remaining free-for-life customers that within a few months it was going to completely stop providing a free version of Workspace to the remaining free-for-life customers, even though Google continued to offer Workspace to these

- 6 -

customers and to other customers generally, and even though this would directly breach Google's promise to the free-for-life customers of continuing free service.  The remaining free-for-life customers would be forced to choose between paying for Workspace or losing the service entirely, in which case they would have to find a new service, migrate their information to that new service, and/or potentially risk losing important data that they were storing on Google's systems.  Facing this difficult choice brought about by Google's breach, many of the free-for-life customers, including Plaintiff, reluctantly decided to pay Google's ransom, providing their payment information to Google to be used by Google to charge them for Workspace.  Beginning in August 2022, these customers, including Plaintiff, are being charged by Google for Workspace service.

19.     Facing public outcry over its announced breach, Google made what could be described as a partial retreat as to *some* customers.  Google announced in or around May 2022 that it would now permit some, *but not all*, of the legacy free-for-life customers to affirmatively "opt-out" of Google's breach and continue to receive a free version of the service—i.e., for these customers, if they took affirmative steps to "opt-out" of the breach, Google would provide those customers with a free version of Workspace, which Google was contractually obligated to provide them anyway.  If such customers did not affirmatively "opt-out"—including, e.g., because they were not aware of this belatedly created option/requirement for affirmative steps— these customers were not provided a free version of the service, and they faced the same choices Google presented them initially (i.e., pay up or have their Workspace service suspended and potentially lose data).  Google's contracts with these customers did not condition their entitlement to continuing free Workspace service on their taking any such affirmative steps like the "opt-out"

2442414.3

1   Google created in or around May 2022.  Google's "partial retreat" in May 2022 did not cure

2   Google's breach as to these customers.

3       20.    Moreover, Google only made the "opt-out" option available to some free-for-life

4   customers—so-called "non-commercial" users, which Google defined as individuals and families

5   who can represent that they are not using the service for "commercial purposes"— even though

6   *all* free-for-life customers entered into the same or materially the same contracts with Google,

7   with the same or materially the same free-for-life promise.  The contracts made no distinction

8   between commercial and non-commercial customers or uses.  Indeed, given the nature of the

9   service, as Google was well aware, a large portion of Workspace users, including of free-for-life

10   customers, utilize the service, in whole or in part, for their businesses.  Nevertheless, so-called

11   "commercial" free-for-life customers, including Plaintiff, were not even given the option to

12   affirmatively "opt-out" of Google's breach.  In no event can they continue to receive free

13   Workspace service (i.e., their only choice was to pay up or have their Workspace service

14   suspended and potentially lose data).

15       **B.**    **<u>Google's Code of Conduct and Removal of "Don't Be Evil."</u>**

16       21.    Google used to tout its unofficial motto of "don't be evil."  The line was even

17   explicitly written into its code of conduct beginning in 2000.  At the time the free-for-life promise

18   was created, in 2006, "don't be evil" was a vital part of the company's ethos.  When Google

19   reorganized with Alphabet as the parent company in 2015, "don't be evil" remained in the code of

20   conduct for Google.  Alphabet adopted a similar credo of "do the right thing."  Clearly, "don't be

21   evil" was deeply ingrained in the company's culture.  In 2018, however, Google abruptly deleted

22   the phrase from its code of conduct.

23

24

- 8 -

22.     In the archived Google code of conduct from prior to 2018, the code explains what the phrase stands for: "it's about providing [Google's] users unbiased access to information, focusing on their needs and giving them the best products and services that [Google] can.  But it's also about doing the right thing more generally – following the law, acting honorably, and treating co-workers with courtesy and respect."

23.     After removing "don't be evil" from its code of conduct, multiple studies showed that Google purposely manipulated algorithms to benefit itself as a company.  These changes were in direct conflict with what "don't be evil" explicitly stood for, including "acting honorably."

24.     Google's abandonment of the credo "don't be evil" is well-illustrated in this case. Google, as the better part of a conglomerate worth nearly two trillion dollars, breaks a promise to loyal customers who helped Google develop a profitable product, in order to pad its already grossly outsized profits.  In the most recent quarter, Google announced profits of **over $16 billion** for just three months.  Under the new Google regime, Plaintiff and the other members of the proposed Class were victims of Google's rapacious need to increase revenues and profits, ethics fairness, and keeping one's word be damned.

**C.**     **Plaintiff's Factual Allegations.**

25.     Plaintiff was formed in 2003 by a husband and wife as they started their business to manage and develop real estate.  It was registered as a State of Washington limited liability company.

26.     Since 2003, Plaintiff has owned and operated a number of real estate holdings, such as apartment buildings.

27.     Plaintiff was for years devoted to Microsoft products, including the Microsoft Office suite of business software and services.  From 2003 through 2008, Plaintiff utilized a suite of Microsoft software for most business purposes.

28.     Like many start up business, profits at Plaintiff were not plentiful in the early years of operations.  Thus, when Plaintiff was presented with Google's free-for-life promise in 2008, Plaintiff was intrigued.

29.     Google was not shy in making its free-for-life promise specifically to small businesses like Plaintiff.  For example, a press release before Plaintiff signed up stated:

> Organizations of all sizes face a common challenge of helping their users communicate and share information more effectively," said Dave Girouard, vice president and general manager, enterprise, at Google. "A hosted service like Google Apps for Your Domain eliminates many of the expenses and hassles of maintaining a communications infrastructure, which is welcome relief for many small business owners and IT staffers. Organizations can let Google be the experts in delivering high quality email, messaging, and other web-based services while they focus on the needs of their users and their day-to-day business.

30.     The release also affirmed that the cost (free) would not increase:

> A standard edition of Google Apps for Your Domain is available today as a beta product without cost to domain administrators or end users. Key features include 2 gigabytes of email storage for each user, easy to use customization tools, and help for administrators via email or an online help center. Furthermore, **organizations that sign up during the beta period will not ever have to pay for users accepted during that period (provided Google continues to offer the service).** (emphasis added).

31.     At the time Plaintiff agreed and signed up to use Workspace, Google's form contract expressly stated:

> 18. <u>Fees</u>.  Provided that Google continues to offer the Service to Customer, Google will continue to provide a version of the Service (with substantially the same services as those provided as of the Effective Date) free of charge to Customer; provided that such commitment: (i) does not apply to the Domain Service described in Section 4 above; and (ii) may not apply to new opt-in services added by Google to the Service in the future.  For sake of clarity, Google reserves the right to offer a premium version of the Service

- 10 -

for a fee.[1]

32.     Google's form contract further excluded the free-for-life promise from the contract's provision that otherwise purported to permit Google to make changes to the contract's terms:

> 17.  <u>Modification</u>.  Except as provided in Section 18, Google reserves the right to change or modify any of the terms and conditions contained in this Agreement or any policy governing the Service, at any time, by posting the new agreement at [web URL].[2]

33.     All of the proposed Class likewise had contracts with Google that included the same or materially the same provisions quoted above.

34.     After considerable discussion, Plaintiff decided to take the leap of faith and to utilize Workspace.  But for Google's free-for-life promise, Plaintiff would have continued using the Microsoft products Plaintiff had already become comfortable with and paid for.  Based on Google's free-for-life commitment, Plaintiff was willing to take the radical step of using this new and relatively untested suite of services.

35.     In the early years, Plaintiff and its owners and employees suffered from the growing pains of Workspace.  There were numerous services in the suite that were rudimentary at best and others that were outright defective.  Moreover, there were glitches and defects in the various software programs.

36.     But Plaintiff stuck with Workspace and even actively worked with Google to help improve the suite of services, often providing feedback and commentary.

---

[1] Exhibit A, attached hereto, at § 18.
[2] Exhibit A, attached hereto, at § 17.  Even if this Section did not have such express exclusion (it does), the Section would be unenforceable at least as to the free-for-life promise given, *inter alia*, the nature and importance of that promise to the bargain.

2442414.3

37. After having been Microsoft veterans and devotees, Plaintiff became a Workspace and Google convert. Plaintiff and its owners and staff have actively promoted Google and its products, including Workspace, to dozens if not hundreds of other customers.

38. Plaintiff and its owners became zealous promoters of all things Google. Thus, Plaintiff's use of Workspace led directly to positive exposure and profits for Google.

39. Thus, Plaintiff was understandably stunned in April 2022, when Plaintiff received an email from Google stating that Google was going to breach its free-for-life promise. The email read:

> Hi there,
>
> Discontinued in 2012, the G Suite legacy free edition has provided access to premium Google Apps features for over 10 years. On June 1, 2022, Google will begin upgrading G Suite legacy free edition accounts to **Google Workspace**.
>
> **Don't wait: Upgrade today and save.**
>
> When upgrading to a Google Workspace paid subscription, you'll unlock new premium collaboration and security features, while continuing to have access to all the ones you already love like using Gmail with your custom domain (ex. your-name@example.com) and the ability to manage multiple users. As a valued customer, you can get started now with Google Workspace Business Standard. Billing will not start until at least August 1, 2022, and you'll also get a discount of at least 50% for 12 months after that date.*
>
> Note: If you no longer want to use Gmail with your custom domain or the ability to manage multiple users, you'll be able to join a waitlist in the Google Workspace Admin Console for a no-cost option in the coming weeks.
>
> In addition to all the features you already rely on, let's take a look at several new capabilities Business Standard gives you:
>
> **Plenty of storage**
>
> Increase your cloud storage capacity to 2 TB per user – that's 133 times more than your current edition. And pooled storage lets users who aren't using their full storage allowance to share it with other

team members.

**Meeting recordings and noise cancellation**

Meet with up to 150 participants and use meeting recordings, noise cancellation, polls, breakout rooms, and more.

**Advanced security**

Create a more trusted environment with fundamental endpoint management, data regions, and trusted external domains.

To get started, visit your Google Workspace Admin Console. Learn more about making the transition to Google Workspace or compare the service editions.

If you do not take action by June 1, 2022, Google will begin transitioning your organization to a new Google Workspace subscription. To complete the transition and avoid account suspension, enter your billing details in your Admin Console before August 1, 2022.

In the future, if you choose the no-cost option or if your subscription is in a suspended state, you won't lose access to additional Google services, including YouTube, Google Photos, and Google Play – or to paid content, including your YouTube and Google Play purchases.

40.     Despite the language in this notice, Plaintiff did not believe Google would actually break the free-for-life promise.  But Google persisted in sending the notices.

41.     On May 24, 2022, Plaintiff received another email from Google that read:

Dear Administrator,

We previously notified you that you'll need to upgrade from the G Suite legacy free edition to Google Workspace by June 1, 2022**,** or your account would be automatically upgraded. However, we've recently updated our timeline for the transition and you now have until **June 27, 2022** to take action.

Along with this change, we've added an offer for those using G Suite legacy free edition for non-commercial use, such as individuals and families, to opt out of the transition.

**What do I need to do?**

- 13 -

For businesses, the G Suite legacy free edition will no longer be available after **June 27, 2022** (updated from June 1, 2022). We recommend you upgrade now to a **Google Workspace** subscription that meets your needs. Upgrading from your G Suite legacy free edition to Google Workspace will only take you a few short steps and is not disruptive to your end-users.

When you've identified your preferred subscription follow these steps:

1. **Go** to your Admin console.

2. **Select** your new subscription offering.

3. **Enter** your billing information.

**If you take no action by June 27, 2022,** we'll start upgrading your organization seamlessly to a new Google Workspace subscription. The new subscription will be based on what you currently use with your G Suite legacy free edition. To complete your upgrade and avoid account suspension, you'll need to set up Google Workspace billing before **August 1, 2022.**

In addition to recent innovations like smart canvas, meetings in documents, and dedicated Spaces to help organize people, topics and projects, Google Workspace includes more storage, increased security, 24/7 support, and more. To upgrade from G Suite legacy free edition and avoid account suspension, switch now and enter your billing details in your Admin Console before **August 1, 2022**. You'll have limited time discount options to support you in this transition.

If you're an individual or family using your account for non-commercial purposes, you can continue using the G Suite legacy free edition and opt out of the transition to Workspace in the Google Admin console before **June 27, 2022.**

In case that you need to reactivate your account, you'll need to log into the Admin console and enter a valid form of payment.

Qualifying educational institutions and nonprofits have the option to migrate to Google Workspace for Education Fundamentals or Workspace for Nonprofits without service disruption.

**Timeline Summary**

2442414.3

| Date | Action |
|------|--------|
| Before **June 27, 2022** | Upgrade to a new Google Workspace subscription or opt out of the transition. |
| Before **August 1, 2022** | Complete your upgrade by setting your Google Workspace billing. |

**FAQs**

Visit the help center for information on the <u>G Suite legacy free edition</u> to Google Workspace transition.

**We're here to help**

If you have questions or need assistance, please <u>Contact Google Workspace support</u>. When you call or submit your support case, use reference issue number 205265775. If you have trouble accessing your administrator account, please refer to instructions <u>to reset your administrator password</u>.

Thanks for choosing Google Workspace.

**– The Google Workspace Team**

42.     Plaintiff still refused to believe that Google would actually break its promise.  But, on June 22, 2022, another email arrived, warning:

Hi there,

We're writing to remind you that on June 27, 2022, Google will begin upgrading G Suite legacy free edition accounts to **Google Workspace**. Get started now with Google Workspace Business Standard for continued access to all the features you love. You'll also unlock several more premium features. Billing will not start until August 1, 2022, at the earliest. As a valued customer, you'll also get a discount of at least 50% for 12 months after that date.*

Note: For individuals and families using your account for non-commercial purposes, you can continue using the G Suite legacy free edition and opt out of the transition to Google Workspace in

- 15 -

1    the Google Workspace Admin Console before June 27, 2022.

2    If you do not take action by June 27, 2022, Google will begin
     transitioning your organization to a new Google Workspace
3    subscription. **To complete the transition and avoid account
     suspension, enter your billing details in your Google Workspace
4    Admin Console before August 1, 2022.**

5    Don't wait: Upgrade today and save.

6    In addition to the features you already rely on, let's take a look at
     several new capabilities Business Standard gives you:

7    **Plenty of storage**

8    Increase your cloud storage capacity to 2 TB per user – that's 132
     times more than your current edition. Pooled storage lets users who
9    aren't using their full storage allowance share it with other team
     members.
10

11   **Meeting recordings and noise cancellation**

12   Meet with up to 150 participants and use meeting recordings, noise
     cancellation, polls, breakout rooms, and more.
13
     **Advanced security controls**
14
     Create a more trusted environment with fundamental endpoint
15   management, data regions, and trusted external domains.

16   To get started, visit your Google Workspace Admin Console. Learn
     more about making the transition to Google Workspace or compare
17   the service editions.

18   If your subscription is in a suspended state, you won't lose access
     to additional Google services, including YouTube, Google Photos,
19   and Google Play – or to paid content, including your YouTube and
     Google Play purchases.

20       43.   On June 30, 2022, an even more dire warning email arrived from Google:

21   **Don't miss out on Google Workspace Business Starter**

22   Our records indicate that you have no payment information on file
     for your Google Workspace Business Starter subscription for
23   thestratfordcompany.com. You have until August 4, 2022 to set up
     your billing information, after which your subscription will be

24

suspended.

To prevent the suspension of all services for all users, sign in to your Google Admin console. Click **Billing** and follow the steps to set up Google Workspace billing and payments.

See complete instructions for fixing payment and billing issues or contact our support team for additional help.

**Sincerely,**

**The Google Workspace Team**

44.     As reflected in the above emails, under this change in 2022, Google continued to offer and provide Workspace to Plaintiff and to customers generally, but stopped providing Plaintiff and other legacy free-for-life customers a free version of Workspace, in direct breach of Google's free-for-life promise.

45.     With respect to Google's later decision to belatedly "allow" "non-commercial" free-for-life customers to "opt-out" of the breach, Plaintiff was not eligible to "opt-out" under Google's stated terms for that, since Plaintiff is not an "individual[] or famil[y] using your account for non-commercial purposes."

46.     Despite having been promised continued free Workspace service by Google, Plaintiff would no longer be provided with a free version of Workspace and had to choose between paying for Workspace or having its Workspace service suspended and having to transition to another service.

47.     Plaintiff formally protested the breach on June 30, 2022.  Google responded in an automated fashion, merely confirming that a complaint file had been opened.

48.     At one point, a Google employee suggested that Plaintiff might complete the non-commercial verification—stating that Plaintiff was not a commercial business, even though it clearly is—and "opt-out" of the breach, and thereby continue to receive the free service.  Plaintiff

- 17 -

was not willing to lie.  Further, Plaintiff could not risk suspension of its Workspace services so it was forced to provide payment and billing information to Google.

49.    Despite being outraged that one of the world's most profitable companies had reneged on its promise in order to pad Google's own billions of dollars in monthly profits—Plaintiff had no practical alternative but to pay Google.  Based on the free-for-life promise, Plaintiff had totally integrated its business with Google's Workspace services.

50.    On or around August 4, 2022, Google began charging Plaintiff for Workspace, beginning with an initial pro-rated charge of $13.23 for the last few days of his billing cycle. Thereafter, Plaintiff's monthly service will be $186.00.  Google intends to charge Plaintiff the same or approximately the same amount each month for one year, after which Google has indicated the monthly charge will double.  Therefore, over the next five years—if Google does not raise prices again—it is expected that Plaintiff will pay at least $20,000 to Google for the promised free-for-life service.

**D.    Other Victims.**

51.    Plaintiff is one of many thousands of victims of Google's decision to breach its free-for-life promise.  Users voiced their frustrations and experiences online.

52.    For example, Workspace user called "pandemicsoul" stated:

> I have a half-dozen legacy free G Suite accounts that I set up way back in the day. One was sort of a "junk email" domain that I used for logins onsites I registered for to try out and whatnot. Another was for my main personal domain. Another was for a family domain. A couple others were projects that then got retired. Now I'm down to two personal Google Workspace accounts and I probably will pay for one of them, while closing the other.
> But the biggest issue for me right now is the club I run, which has nearly 30 accounts on our Google Workspace domain. The only reason I did this, way back when, was because of the promise of "free forever."
> While we have about 30 people on Google Workspace, we have another 70 or so "non-staff" members. Our entire group of about 100 fundraises for our website costs every year, which are considerable for an all-volunteer group($2000-ish)

- 18 -

because we have a pretty resource intensive MediaWiki installation, and other resources.

We've spent 10 years integrating with Google. All of our other resources use Google login. Our group has dozens of Google Groups used for sub-committees. We use Google Drive/Docs excessively. And so on.

But there's no way we can afford to DOUBLE our costs just for Google Workspace. And we can't get a non-profit discount because we're not a charitable organization – we're just a club of writers.

So for us, this is a huge nuisance because not only is Google breaking the agreement it made with us ("FREE FOREVER"), but I don't have the time or resources to manage this kind of transition to something else. And...what, even? If we had known from the beginning they'd break their promise of being free forever, I just wouldn't have built so much infrastructure on top of this system.

53.   A customer called "300bps" offered:

Looking at it another way, Google's most recent net profit is $18.94 billion per quarter.

I have no idea but if there are 1 million G Suite Legacy accounts out there at $60 per year. That would increase their revenue $60 million per year.

So just assume all that revenue is net profit which would make their quarterly net profit go from $18.94 billion to $18.955 billion for the low cost of pissing off 1 million people.

54.   Another complaint came from "seanhunter":

A lot of people are talking about entitlement and saying how people shouldn't complain when free stuff goes away. I think those people are missing the point. Google is an incredibly profitable company and it would cost them almost nothing to continue to offer this service. By choosing not to, they piss people off (rightly or wrongly) and won't make much of anything in return. We can speculate about how they got to a place where maintaining this service was painful enough to justify doing that, but from the outside it seems like a poor decision that is hostile to users and antithetical to how they used to do things. That plays into the narrative that this ain't your mamma's google any more and something cool about the 2000s spirit has passed away.

55.   Another online complaint came from "chimprich":

It's basically the drug dealer business model: get people hooked for free, then start charging them a huge amount when it's too difficult for them to stop. At least your local heroin vendor doesn't pretend it's /always/ going to be free, though...

56.   Workspace user "Jacquesm" lamented:

2442414.3

No. People are pissed off because this is a clear example of bait and switch. Google advertised this as Free forever. Forever isn't a decade. If they had instead marketed it as 'free for a decade and then you'll pay some arbitrary amount' what do you think the adoption would have been?

57.     These are but a few illustrative examples of the complaints from victims of Google's breach of its free-for-life promise.  Such complaints are, of course, just the tip of the iceberg; most customers suffer in silence, understandably reluctant to challenge the company holding their data and upon which they are in significant part dependent for their livelihoods.

58.     As a result of Google's systemic breach of its free-for-life promise, at least thousands of free-for-life customers have been and will be damaged, *inter alia*, by having to pay for Workspace when they are supposed to receive free service.  That includes Plaintiff and many other "commercial" free-for-life customers to which Google never even provided the belated option to "opt-out" of Google's breach, as well as "non-commercial" free-for-life customers who provided their payment information in response to Google's threat, before and after Google's partial retreat.  Many free-for-life customers will be damaged by losing the valuable Workspace service that they were supposed to receive from Google for free on a continuing basis.  Moreover, many free-for-life customers who do not pay Google's ransom have been harmed and will be harmed via Google's suspension of their Workspace service which will cause various losses, including but not limited to loss of their data stored on Google's systems, loss of paid content, and loss of emails and records.

## V.     CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this class action on behalf of itself and the following "Class":

All persons or entities in the United States who: (a) signed up for Google Workspace during Google's free-for-life promotion (between 2006 and 2012); and (b) were still receiving free Google Workspace service as of January 1, 2022.

- 20 -

2442414.3

1

2

3

    Excluded from the Class are any customers who, beginning in May 2022, successfully "opted out" of Google's "transition" of their account to paid Google Workspace prior to being charged for Google Workspace or having their Google Workspace account suspended by Google.

4

5

6

    Also excluded from the Class are Google's officers, directors, affiliates, representatives, employees, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

7

Plaintiff reserves the right to modify the Class definition after discovery is conducted.

8

    64.    <u>Numerosity</u>: There are at least thousands of victims of Google's failure to honor

9

the free-for-life promise and likely tens or hundreds of thousands.  As of 2010, at least two

10

million people and businesses were using Workspace.  Discovery will show that many of these

11

persons and entities were still customers in January of 2022 when Google announced it would be

12

breaking the free-for-life promise.

13

    65.    <u>Common Questions of Law and Fact Predominate</u>:  There are many questions of

14

law and fact common to Plaintiff and the Class and those questions substantially predominate

15

over any questions that may affect individual Class members.  Common questions of law and fact

16

include, but are not limited to:

17

    a.    Did Google's form contract with Plaintiff and the Class include a promise

18

by Google to provide them with a free version of Google Workspace as long as Google offered

19

Workspace service?

20

    b.    Did Google's failure to honor the free-for-life promise constitute a breach

21

of contract?

22

    c.    Did Google's failure to honor the free-for-life promise violate the implied

23

covenant of good faith and fair dealing?

24

1            d.      Was Google unjustly enriched as a result of its improper conduct alleged

2 herein?

3            e.      Did Google's breach of the free-for-life promise constitute unfair and/or

4 unlawful business practice in violation of California's Unfair Competition Law?

5      66.     <u>Typicality</u>:  Plaintiff's claims and those of the Class all arise from the same course

6 of conduct by Google and are based on the same legal theories.  Plaintiff's claims are typical of

7 the Class members' claims.

8      67.     <u>Adequacy of Representation</u>:  Plaintiff will fairly and adequately represent and

9 protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in

10 prosecuting complex and consumer class action litigation.  Plaintiff and Plaintiff's counsel are

11 committed to vigorously prosecuting this action on behalf of the Class and have the financial

12 resources to do so.  Plaintiff has no interests antagonistic to Class members' interests and is

13 committed to representing the best interests of the Class.

14      68.     <u>Superiority of Class Action</u>:  Plaintiff and the members of the Class suffered, and

15 will continue to suffer, harm as a result of Google's unlawful and wrongful conduct alleged

16 herein.  A class action is superior to other available methods for the fair and efficient adjudication

17 of the present controversy.  Individual joinder of all members of the Class is impractical.  Even if

18 individual Class members had the resources to pursue individual litigation, it would be unduly

19 burdensome to the courts in which the individual litigation would proceed.  Individual litigation

20 magnifies the delay and expense to all parties in the court system of resolving the controversies

21 engendered by Google's common course of conduct.  The class action device allows a single

22 court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable

23 handling of all Class members' claims in a single forum.  The conduct of this action as a class

24

action conserves the resources of the parties and of the judicial system and protects the rights of the Class members.

69. <u>Risk of Inconsistent or Varying Adjudication</u>:  Class treatment is proper and this action should be maintained as a class action for additional reason that the risks of separate actions by individual members of the Class would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Google; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impeded their ability to protect their interests.

70. <u>Action Generally Applicable to Classes as a Whole</u>:  Google, as the party that may potentially oppose certification of the Class, has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief.

## VI. <u>CHOICE OF LAW</u>

71. California law governs the substantive legal issues in this case.  Google's form contracts with Plaintiff and all Class members provide for the application of California law. *See, e.g.,* Exhibit A.

## VII. <u>CAUSES OF ACTION</u>

### FIRST CAUSE OF ACTION
### <u>Breach of Contract</u>

72. Plaintiff restates and incorporates by reference the allegations in all paragraphs above as though fully set forth herein.

- 23 -

73.     Plaintiff and the Class have contracted with Google for the provision of the Workspace business suite of software, products, and services (the "Agreement").  The Agreement promised: "Provided that Google continues to offer the Service to Customer, Google will continue to provide a version of the Service (with substantially the same services as those provided as of the Effective Date) free of charge to Customer . . . ."  The Agreement further excluded the foregoing promise from the provision that otherwise purported to give Google discretion to change terms.

74.     Google received substantial benefits and consideration in exchange for its promise of continuing free service, including but not limited to: (a) getting Plaintiff and the Class to sign up on the promise of continuing free service allowed Google to use such customers' experiences and uses of the service to refine Workspace, positioning Google to market the service to other customers, and to market premium versions of the service with additional features, for a fee; (b) signing up early adopters better positioned Google to establish long-term brand loyalty/relationships with such customers; and (c) Google received benefits from these users via Google's collection and use of their personal data.

75.     As described above, the actions of Google violate the specific terms of the Agreement.  Google is liable for the losses of Plaintiff and the Class that have resulted from Google's breach of the Agreement.

76.     At all relevant times, including since January 2022, Google has continued to offer Workspace to Plaintiff and the Class and to customers generally.

77.     Google breached the Agreement with Plaintiff and the Class by reneging on its promise to continue to provide them with a free version of Workspace.

- 24 -

78.     Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them under the Agreement, or those obligations have been waived by Google.

79.     As a result of Google's breaches of the Agreement alleged herein, Plaintiff and the Class have been damaged, including but not limited to by being charged for Workspace beginning in 2022, and losing a valuable free service that Google had promised it would provide to them on a continuing basis.

80.     As a result of Google's breaches of the Agreement alleged herein, members of the Class will incur data losses and other harms associated with having their Workspace service suspended by Google.

81.     Absent an order requiring Google to specifically perform its contractual promise to continue to provide free service, Plaintiff and the Class will continue to suffer harm.

**SECOND CAUSE OF ACTION**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

82.     Plaintiff restates and incorporates by reference the allegations in all paragraphs above as though fully set forth herein.

83.     California law imposes upon each party to a contract the duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute violations of good faith and fair dealing in the performance of contracts.

- 25 -

84.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

85.     To the extent Google's Agreement with Plaintiff and the Class could be read as granting Google discretion regarding its continuing provision of free Workspace to Plaintiff and the Class and/or to change terms related to same, neither of which Plaintiff concedes, that discretion is not unlimited, but rather is limited by the covenant of good faith and fair dealing implied in every contract by California law.

86.     Google has violated the covenant of good faith and fair dealing by its conduct alleged herein.

87.     By its conduct alleged herein, Google has abused any discretion it had under the Agreement, if any, regarding its continuing provision of free Workspace to Plaintiff and the Class and/or to change terms related directly or indirectly to same.  Google's conduct in connection with ceasing to provide Plaintiff and the Class with a free version of Workspace defied those customers' reasonable expectations, was objectively unreasonable, and frustrated the basic terms and bargain of the parties' Agreement.  Google's conduct alleged herein was arbitrary and in bad faith.

88.     Google's conduct alleged herein has had the effect, and the purpose, of denying Plaintiff and Class the full benefit of their bargains with Google.

89.     By going back on its word regarding the continuing provision of free Workspace service for Plaintiff and the Class, Google has violated the spirit of the contract and breached the covenant of good faith and fair dealing.  It simply was not acceptable for Google to lure customers by promising continuing free service, only to breach that promise.  Notably, there was

no need for Google to breach its promise, particularly as Google makes profits of several billion dollars per month.

90.     Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them under the Agreement, or those obligations have been waived by Google.  There is no legitimate excuse or defense for Google's conduct.

91.     As a result of Google's breaches of the Agreement alleged herein, Plaintiff and the Class have been damaged, including but not limited to by being charged for Workspace beginning in 2022, and losing a valuable free service that Google had promised it would provide to them on a continuing basis.

92.     As a result of Google's breaches of the Agreement alleged herein, members of the Class will incur data losses and other harms associated with having their Workspace service suspended by Google.

93.     Absent an injunction enjoining Google from continuing its breaches, Plaintiff and the Class will continue to suffer harm.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment/Quasi-Contract**

94.     Plaintiff restates and incorporates by reference the allegations in all paragraphs above as though fully set forth herein.

95.     This cause of action is pled in the alternative.  *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

96.     Google has been unjustly enriched at the expense of Plaintiff and the other members of the Class who signed up for Workspace under Google's promise of continuing free Workspace service, which promise Google violated starting in 2022.

2442414.3

97.    Plaintiff and the other members of the Class were unjustly deprived of money obtained by Google as a result of Google's misconduct alleged herein.

98.    It would be inequitable and unconscionable for Google to retain the profit, benefit, and other compensation obtained from Plaintiff and the other members of the Class as a result of Google's wrongful conduct.

99.    Plaintiff and the other members of the Class are entitled to seek and do seek restitution from Google as well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by Google by virtue of its wrongful conduct.

100.    Google's  unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

101.    Under the doctrine of unjust enrichment, it is inequitable for Google to be permitted to retain the benefits it has received, and is still receiving, without justification. Google's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

102.    Plaintiff and the Class have suffered financial loss as a direct result of Google's conduct.

103.    The financial benefits derived by Google rightfully belong to Plaintiff and members of the Class.

104.    Plaintiff and the Class are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits and other compensation obtained by Google as a result of Google's misconduct alleged herein, and for such other relief that this Court deems proper.

**FOURTH CAUSE OF ACTION**
**Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200**

105.    Plaintiff restates and incorporates by reference the allegations in all paragraphs above as though fully set forth herein.

106.    This cause of action is pled in the alternative.

107.    Google's conduct described herein violates the "unfair" and "unlawful" prongs of California's Unfair Competition Law (the "UCL"), codified at California Business and Professions Code §§ 17200, *et seq.*

108.    By its conduct alleged herein, Google has violated the "unfair" prong of the UCL, including without limitation by: (a) promising Plaintiff and the Class continuing free Workspace service, in order to get them to sign up and benefit Google as alleged herein, and then reneging on that promise; (b) forcing Plaintiff and the Class to choose between paying for Workspace when Google had promised them free service, or having their service suspended, and thereby pressuring customers to provide payment information and pay for Workspace service they should have continued to receive for free; (c) after Google partially retreated on its breach as to "non-commercial" customers, denying "commercial" free-for-life customers any access to continuing free Workspace (despite no basis in the Agreement for distinguishing between commercial and non-commercial customers), and requiring "non-commercial" free-for-life customers to take affirmative steps to "opt out" of Google's breach to get a free service Google was supposed to be providing them anyway; (d) suspending Google Workspace services for free-for-life customers who did not pay for service when Google reneged on its promise, and threatening to delete and/or deleting the data of such customers stored on Google's systems.

109.    Google's conduct alleged herein is immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially injurious to Plaintiff and the Class.  By its conduct alleged

herein, Google has already improperly extracted at least several millions of dollars from customers in California and throughout the United States.  There is no utility to Google's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm caused by Google's conduct alleged herein.

110.    Google's conduct alleged herein also violate California public policy, including as such policy is reflected in Cal. Civ. Code § 1750, *et seq.*, Cal. Civ. Code §§ 1709-1710, and California common law contract law.

111.    By its conduct alleged herein, Google has also violated the "unlawful" prong of the UCL, including by engaging in deceit in violation of Cal. Civ. Code §§ 1709-1710, and breaching contractual promises and/or violating the implied covenant of good faith and fair dealing, in violation of California common law.

112.    By its conduct alleged herein, Google received money from Plaintiff and the Class that Google should not have received, including but not limited to fees paid for Workspace service, and other valuable benefits as alleged herein.

113.    As a direct and proximate result of Google's unfair and unlawful conduct, Plaintiff and the proposed Class members lost money and have lost other property and benefits in which Plaintiff and the Class have a vested interest, including losing valuable free service that Google was contractually required to provide to them and which Google is now denying to them.

114.    Plaintiff seeks an order granting restitution to Plaintiff and the Class in an amount to be proven at trial.

115.    Google's conduct has caused substantial injury to Plaintiff and the Class. Google's conduct is ongoing and will continue absent a permanent injunction.  Accordingly,

1  Plaintiff seeks an order enjoining Google from continuing its misconduct alleged herein and

2  ordering Google to honor its promises of continuing free service to Plaintiff and the Class.

3       116.   Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ.

4  Proc. § 1021.5.

5  **VIII.**  **PRAYER FOR RELIEF**

6       WHEREFORE, Plaintiff, on behalf of itself and the proposed Class, requests that this

7  Court:

8       a.   Certify this case as a class action and appoint Plaintiff as Class

9  Representative and Plaintiff's counsel as Class Counsel;

10       b.   Order Google to pay damages and restitution to Plaintiff and the Class in

11  an amount to be proven at trial;

12       c.   Award permanent injunctive relief, and order specific performance,

13  requiring Google to stop its violations alleged herein and to honor its promise of continuing free

14  service to Plaintiff and the Class;

15       d.   Order Google to pay attorneys' fees, costs, and pre-judgment and post-

16  judgment interest;

17       e.   Provide all other relief to which Plaintiff and the Class may show

18  themselves justly entitled.

19  **IX.**  **JURY DEMAND**

20       Plaintiff demands a trial by jury on all issues so triable.

21

22

23

24

2442414.3

1    Dated:    August 5, 2022              Respectfully submitted,

2                                          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

3

4                                          By: */s/ Roger N. Heller*
                                              Roger N. Heller

5
                                              Roger N. Heller (State Bar No. 215348)
6                                             rheller@lchb.com
                                              LIEFF CABRASER HEIMANN &
7                                             BERNSTEIN, LLP
                                              275 Battery Street, 29th Floor
8                                             San Francisco, CA 94111
                                              Telephone:  415.956.1000
9                                             Fax:  415.956.1008

10                                            Daniel E. Seltz (pro hac vice forthcoming)
                                              dseltz@lchb.com
11                                            LIEFF CABRASER HEIMANN &
                                              BERNSTEIN, LLP
12                                            250 Hudson Street, 8th Floor
                                              New York, NY  10013-1413
13                                            Telephone:  212.355.9500
                                              Fax:  212.355.9592

14

15                                            E. Adam Webb (pro hac vice forthcoming)
                                              Adam@WebbLLC.com
16                                            G. Franklin Lemond, Jr. (pro hac vice
                                              forthcoming)
17                                            Franklin@WebbLLC.com
                                              WEBB, KLASE & LEMOND, LLC
18                                            1900 The Exchange S.E., Suite 480
                                              Atlanta, GA 30339
19                                            Telephone: 770.444.0773
                                              Fax:  770.217.9950

20                                            *Attorneys for Plaintiff and the Proposed Class*

21

22

23

24

- 32 -