United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

|  |  |
|---|---|
| STEVE RABIN, et al., | Case No.  22-cv-04547-BLF |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART** |
| GOOGLE LLC, | [Re:  ECF No. 27] |
| Defendant. | |

In this putative consumer class action, Plaintiffs assert that Google lured them into using its suite of productivity tools called Google Apps by promising free access for as long as it is available.  Plaintiffs allege that Google broke this promise when, after they had used the tools for years, Google began charging Plaintiffs.  Plaintiffs' operative First Amended Complaint asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of California's Unfair Competition Law ("UCL").

Before the Court is Google's Motion to Dismiss the First Amended Complaint.  Mot., ECF No. 27.  Plaintiffs oppose the motion.  Opp'n, ECF No. 36.  Google has filed a reply in support of its motion.  Reply, ECF No. 37.  The Court heard oral argument on April 27, 2023.

Having carefully considered the parties' respective written submissions, the oral argument of counsel, and relevant legal authority, the motion is hereby GRANTED WITH LEAVE TO AMEND IN PART.

## I.   BACKGROUND

### A.   Google Develops Google Apps

In 2006 Google launched a suite of cloud computing, productivity, and collaboration tools and services called "Google Apps."  First Am. Compl. ("FAC") ¶ 14, ECF No. 20.  Google Apps

was rebranded as "G Suite" in 2016 and rebranded again as "Google Workspace" in 2020.[1]  FAC ¶ 14.  These various iterations of the product called Google Apps – G Suite – Workspace will be referred to as "the Service."  Google Workspace still exists today and includes such tools as Gmail, Calendar, and Google Docs.  FAC ¶¶ 11, 14.

Early on, Google Apps suffered from many defects and gaps in its tools.  FAC ¶ 16.  To entice users during these early years, Google offered Google Apps for free.  FAC ¶ 16.  In exchange, Google used user data and experiences to improve Google Apps.  FAC ¶ 16.

**B.      Rabin and Graves Enroll in the Service**

Plaintiff Steve Rabin was one of the users who enrolled in Google Apps in these early years.  FAC ¶¶ 5, 56.  When Rabin enrolled in 2009, Google's form contract included the following Fees provision:

> 18. **Fees.** Provided that Google continues to offer the Service to Customer, Google will continue to provide a version of the Service (with substantially the same services as those provided as of the Effective Date) free of charge to Customer; provided that such commitment: (i) does not apply to the Domain Service described in Section 4 above; and (ii) may not apply to new opt-in services added by Google to the Service in the future. For sake of clarity, Google reserves the right to offer a premium version of the Service for a fee.

FAC ¶ 56; *see also* FAC, Ex. B ("2009 Agreement") § 18, ECF No. 20-2.[2]  The 2009 Agreement also contained a Termination provision that states in relevant part:

> 16. **Termination**. Customer may discontinue use of the Service at any time. Except as provided in Section 18, Google reserves the right at any time and from time to time to modify the Service (or any part thereof) with or without notice. Customer agrees that Google may at any time and for any reason terminate this Agreement and/or terminate the provision of all or any portion of the Service.

2009 Agreement § 16.

---

[1] Google disputes that Google Apps, G Suite, and Workspace are the same products.  Mot. 5.  For the purposes of this motion to dismiss, the Court accepts as true Plaintiffs' allegation that they are the same product.  *See Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011) ("When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.")

[2] As filed by Plaintiffs, this exhibit has a cover sheet referring to it as Exhibit A, but Plaintiffs refer to it as Exhibit B throughout the FAC.  The parties also refer to this agreement as Exhibit B in their briefing.  The Court follows the parties' convention.

Plaintiff Ian Graves signed up for Google Apps in 2012.  FAC ¶ 6.  When Graves enrolled, Google's form contract included the following fees provision:

> **4. Fees.** The Service is provided at no charge to Customer provided that Customer agrees that Google may (a) add optional services to Customer or its End Users for a fee or (b) offer a premium version of the service for a fee.

FAC ¶ 81; *see also* FAC, Ex. C ("2012 Agreement") § 4, ECF No. 20-3.[3]  The 2012 Agreement also contained a Termination provision.  It states, in relevant part:

> 11.2 <u>By Google</u>. Customer agrees that Google may at any time and for any reason terminate this Agreement and/or terminate the provision of all or any portion of the Service.

2012 Agreement § 11.2.

### C.  Google Begins to Charge New Users

By late 2012, Google Apps had improved and Google began charging new users who signed up.  FAC ¶ 17.  Google did not, however, charge its legacy users who were already using Google Apps.  FAC ¶ 17.

### D.  Google Announces Plan to Charge Plaintiffs and Other Legacy Users

In early 2022, Google announced that it planned to stop providing a free version of the Service.  FAC ¶ 18.  Legacy users would be required to either pay for the Service or forgo using it.  FAC ¶ 19.

To this end, Google emailed Mr. Rabin and Mr. Graves in April 2022 stating that it would begin "upgrading" G Suite legacy free edition accounts like his to Google Workspace.  FAC ¶¶ 65, 87.  The email stated that if a user did not take action by June 1, 2022, Google would begin to transition the user's organization to a new Google Workspace subscription.  FAC ¶¶ 65, 87.  The email instructed users to enter their billing details in their Admin Console before August 1, 2022, to "complete the transition and avoid account suspension."  FAC ¶¶ 65, 87.  Google sent Mr. Rabin and Mr. Graves additional emails in May and June.  FAC ¶¶ 66-67, 87.

---

[3] This agreement is attached to the FAC as Exhibit B but referred to in the FAC as Exhibit C throughout.  The parties refer to this agreement as Exhibit C in their briefing.  The Court follows the parties' convention.

United States District Court
Northern District of California

1    On June 22, 2022, Mr. Graves provided Google his payment and billing information.  FAC

2    ¶ 90.  Mr. Graves had become heavily integrated with Google's Workspace services and

3    determined that he had no practical alternative but to pay Google.  FAC ¶ 90.

4    In August and September 2022, Google sent Mr. Rabin several emails stating that he had

5    until September 6, 2022, to set up his billing information or else his subscription would be suspended.

6    FAC ¶¶ 68-69.

7    Google suspended Mr. Rabin's Workspace account on September 6, 2022, and Mr. Rabin

8    provided his billing information that same day.  FAC ¶¶ 73-74.  Mr. Rabin depended on the Service to

9    keep his business running and could not risk continued suspension of the Service.  FAC ¶ 74.

10   Google began charging legacy users who opted to pay for the Service, including Mr. Rabin

11   and Mr. Graves, in August or September of 2022.  FAC ¶¶ 19, 76, 93.

12   Plaintiffs now bring this action, asserting that Google promised that their access to the

13   Service would be "free for life."  FAC ¶ 15.  Plaintiffs assert claims for (1) breach of contract; (2)

14   breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment or quasi-

15   contract; and (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

16   Code § 17200.  FAC ¶¶ 111-157.  Plaintiffs bring their claims on behalf of themselves and all

17   others in the United States who signed up for Google Workspace between 2006 and 2012 and

18   were receiving free Google Workspace service as of January 1, 2022.  FAC ¶ 102.

19   ## II.    LEGAL STANDARD

20   Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails

21   to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, the plaintiff

22   must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

23   *Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts

24   that allow the court to "draw the reasonable inference that the defendant is liable for the

25   misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must

26   be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  While courts do not

27   require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a

28   right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

United States District Court
Northern District of California

4

United States District Court
Northern District of California

When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese*, 643 F.3d at 690.  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

## III.    DISCUSSION

### A.    Breach of Contract (Claim 1)

Plaintiffs' first claim asserts that Google breached the 2009 and 2012 Agreements by "reneging on its promise to continue to provide them with a free version of [the Service]."  FAC ¶ 118.  Google argues that Plaintiffs' claim fails for four reasons: (1) the Agreements expressly permitted Google's alleged conduct; (2) Plaintiffs entered into a new agreement with Google that acted as a novation; (3) Plaintiffs made voluntary payments to Google with knowledge of the relevant facts; and (4) Plaintiffs have no legally viable remedy. Mot. 7-14.

The Court addresses each of Google's arguments in turn.  As explained below, the Court finds that Google prevails on its argument that, as alleged, the FAC establishes that Plaintiffs made voluntary payments to Google knowledge of the relevant facts.  The Court finds that Google does not prevail on any of its other arguments.

#### 1.  Terms of the Agreements

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 124 (2015) (citation omitted).  Here, the parties dispute whether Plaintiffs' have plausibly alleged the third element—Google's alleged breach.

The parties' briefing focuses on whether the Agreements permitted Google to stop

providing Plaintiffs free access to the Service.  Google argues that the Agreements' Termination provisions expressly permitted Google to stop providing the Service for free and terminate the Agreements at any time for any reason.  Mot. 7-8.  Plaintiffs respond that the Termination provision is inconsistent with and more general than the Fees provisions and therefore must yield to the Fees provisions.  Opp'n 8-9.  Google replies that the Fees provision and Termination provision operate side-by-side because they do not deal with the same subject matter and are not inconsistent.  Reply 2.

At oral argument, Plaintiffs shifted their argument.  They argued that even if Google is correct that it was permitted to terminate the Agreements and stop providing the Service for free, there were no allegations in the FAC that Google had in fact Terminated the Agreements.  Plaintiffs' theory of the case—as clarified at the hearing—is that Google began charging them for the Service without terminating their respective Agreements.  In response to this theory, Google argued at the hearing that its termination of the Agreements is evident from the customer emails quoted in the FAC.

The Court begins by analyzing whether the Agreements' terms allowed Google to terminate Plaintiffs' respective agreements and stop providing the Service for free.  The Court will then analyze whether the FAC plausibly alleges that Google has begun charging Plaintiffs for the Service without terminating the Agreements.

"The words of a contract are to be understood in their ordinary and popular sense" unless "used by the parties in a technical sense" or "a special meaning is given to them by usage." *Lewis*, 244 Cal. App. 4th at 124 (quoting Cal. Civ. Code, § 1644.)  Neither party disputes that the terms of relevant provisions of the Agreements are used in their "ordinary and popular sense."

The Termination provision in both the 2009 and 2012 Agreements states, in relevant part that "Google may at any time and for any reason terminate this Agreement and/or terminate the provision of all or any portion of the Service."  2009 Agreement § 16; 2012 Agreement § 11.2.

Plaintiffs contend that the Termination provision cannot be read to permit Google to terminate the Agreements or Services at any time it pleases because that would render the Termination provision inconsistent with the Agreements' Fees provisions.  The 2009 Agreement's

United States District Court
Northern District of California

1  Fees provision reads:

2      18. **Fees**. Provided that Google continues to offer the Service to
       Customer, Google will continue to provide a version of the Service
3      (with substantially the same services as those provided as of the
       Effective Date) free of charge to Customer; provided that such
4      commitment: (i) does not apply to the Domain Service described in
       Section 4 above; and (ii) may not apply to new opt-in services added
5      by Google to the Service in the future. For sake of clarity, Google
       reserves the right to offer a premium version of the Service for a fee.
6
7  2009 Agreement § 18.  The Fees 2012 Agreement's Fees provision reads:

8      4. **Fees**. The Service is provided at no charge to Customer provided
       that Customer agrees that Google may (a) add optional services to
       Customer or its End Users for a fee or (b) offer a premium version of
9      the Service for a fee.

10  2012 Agreement § 4.

11      Under California law, "[t]o the extent practicable, the meaning of a contract must be

12  derived from reading the whole of the contract, with individual provisions interpreted together, in

13  order to give effect to all provisions and to avoid rendering some meaningless." *Zalkind v.*

14  *Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1027 (2011) (collecting cases); *see also* Cal. Civ. Code

15  § 1641.  "[W]hen general and specific provisions of a contract deal with the same subject-matter,

16  the specific provisions, if inconsistent with the general provisions, are of controlling

17  force." *Scudder v. Perce*, 159 Cal. 429, 433 (1911); *see also* Cal. Civ. Proc. Code § 1859.

18  However, absent an inconsistency, both provisions remain in full force.  *See NavCom Tech., Inc.*

19  *v. Oki Elec. Indus. Co.*, No. 5:12-CV-04175-EJD, 2014 WL 991102, at *8 (N.D. Cal. Mar. 11,

20  2014), *aff'd*, 756 F. App'x 682 (9th Cir. 2018).

21      Here, the Termination provision is not inconsistent with either Fees provision and therefore

22  remains in force.  The Termination provision permits Google to terminate the Agreement (or the

23  Service) at any time for any reason.  The 2009 Agreement's Fees provision states: "Provided that

24  Google continues to offer Service to Customer, Google will continue to provide a version of the

25  Service (with substantially the same services as those provided as of the Effective Date) free of

26  charge to the Customer."  The 2012 Agreement states that "[t]he Service is provided at no charge

27  to Customer provided that Customer agrees that Google may (a) add optional Services to

28  Customer or its End Users for a fee or (b) offer a premium version of the Service for a Fee."

United States District Court
Northern District of California

Nothing in either Fees provision purports to limit Google's ability to terminate the Agreement. Therefore, even assuming that Plaintiffs are right that the Fees provisions are specific and the Termination provision is general, the Termination provision's grant of authority to terminate the Agreement remains in force because it is not inconsistent with the Fees provision. *See NavCom*, 2014 WL 991102, at *8.

Although the Termination provision permits Google to terminate the Service or the Agreements, Plaintiffs have plausibly pled that Google charged Plaintiffs without invoking the termination provision. Plaintiffs expressly allege that Google has not terminated the Service. FAC ¶¶ 70, 88. The Court accepts this allegation as true. *See Loyd v. Paine Webber, Inc.*, 208 F.3d 755, 759 (9th Cir. 2000) ("[A]ll allegations of material fact are taken as true and construed in favor of the nonmoving party"). Plaintiffs do not allege that Google terminated the Agreements. Nor do the emails quoted in the FAC establish as a matter of law that Google terminated the Agreements. In an April 2022 email to Plaintiffs, Google stated that it "will begin upgrading G Suite legacy free edition accounts to Google Workspace." *See* FAC ¶¶ 65, 87. Nowhere does the email say that Google was terminating any agreement. Follow-up emails in May and June 2022 again refer to an "upgrade" from G Suite legacy free edition to Google Workspace but do not mention termination of any existing agreement. *Id.* ¶¶ 66-67, 87. In August 2022, Google sent an email requiring Mr. Rabin to set up his billing information to avoid suspension of his account, but again the email did not refer to termination of any agreement. *Id.* ¶ 68. Because the emails do not include any language terminating or otherwise referring to any existing agreements, the Court construes the allegations in favor of Plaintiffs that there is a reasonable inference that Google did not terminate the 2009 and 2012 Agreements. *See Loyd*, 208 F.3d at 759 (stating that allegations are construed in favor of the nonmoving party).

Google does not dispute that charging Plaintiffs for the Service without terminating the Agreements would amount to breach. Plaintiffs allege that Google charged them for the Service. And a reasonable inference can be drawn that Google never terminated the Agreements from the absence of any language in the communications from Google expressly terminating the Agreements. Accordingly, Google's motion to dismiss Plaintiffs' breach of contract claim on the

United States District Court
Northern District of California

1    ground that Google's conduct was expressly permitted by the Agreements is DENIED.

2         **2. Novation**

3         Google moves to dismiss Plaintiffs' breach of contract claim on the ground that Plaintiffs

4    entered into a new agreement with Google that acted as a novation.  Mot. 10.  Google argues that

5    the Google Workspace Terms of Service that were effective when Plaintiffs began paying for the

6    Service (Srivatsa Decl. Ex. A ("Paid Subscription Agreement" or "PSA"), ECF No. 27-1) confirm

7    of the existence of a novation.[4]  *Id.* at 11, 23-25.  Plaintiffs respond that nothing in the pleadings or

8    judicially noticeable materials establishes that Plaintiffs agreed to a new agreement.  Opp'n 10.

9    Plaintiffs also argue that any new agreement occurred after Google's alleged breach, was procured

10   by duress, and lacks consideration.  *Id.* at 10-14.  Plaintiffs further argue that "the perpetual nature

11   of [Google's] promise . . . renders the doctrine of novation inapplicable."  *Id.* at 12.

12        "Novation is the substitution of a new obligation for an existing one."  *Wells Fargo Bank*

13   *v. Bank of Am.*, 32 Cal. App. 4th 424, 431 (1995) (quoting Cal. Civ. Code § 1530).  Under

14   California law, the party attempting to prove novation must satisfy "four essential requisites: (1) a

15   previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the

16   extinguishment of the old contract; and (4) the validity of the new one."  *Metro. Transp. Comm'n*

17   *v. Motorola, Inc.*, 342 F. App'x 269, 271 (9th Cir. 2009) (quoting *Young v. Benton,* 21 Cal. App.

18   382 (1913)).

19        The Court finds that the facts alleged in the pleadings and judicially noticed PSA do not

20   establish a novation.  The second element of novation—the agreement of all the parties to the new

21   contract—is not established.  Nowhere do Plaintiffs allege that they agreed to the PSA.  And the

22   PSA Google submitted with its opposition does not suggest that they did, as it is a boilerplate

23

24   [4] Google requests that the Court take judicial notice of the PSA, which is publicly available via the
     Internet Archive (Wayback Machine).  *See* Srivatsa Decl. ¶ 2.  Plaintiffs do not oppose Google's
25   request.  The Court grants Google's Request for Judicial Notice but only for the fact that there is a
     document that purports to be the Google Workspace Terms of Service on the webpage located at
26   the URL referenced in the request.  *See Craigslist, Inc. v. DealerCMO, Inc.*, No. 16-CV-01451-
     VC, 2017 WL 6334142, at *3 n.3 (N.D. Cal. Apr. 11, 2017) (taking judicial notice of materials
27   from the Wayback Machine for the fact of "the appearance of the listed websites in the past").
     The Court does not take judicial notice of inferences that might be drawn from the appearance of
28   the document or to adjudicate factual disputes that are implicated by any such inferences.  *See id.*

United States District Court
Northern District of California

agreement that does not reflect that either Plaintiff signed or otherwise assented to its terms.
Google contends that Plaintiffs' agreement to the PSA is evident from Plaintiffs' allegations that
Google sent them emails stating that "Google will begin transitioning your organization to a new
Google Workspace subscription." Mot. 10. The Court disagrees. As an initial matter, this
allegation does not establish whether Plaintiffs were ever transitioned to a new subscription. Even
if it did, nothing in this allegation renders unreasonable the inference that Google transitioned
Plaintiffs to a new subscription without requiring their assent to the PSA. At this stage, the Court
must draw all reasonable inferences in Plaintiffs' favor. *See, e.g., Lee v. City of Los Angeles*, 250
F.3d 668, 690 (9th Cir. 2001). Google also argued at the hearing that Plaintiffs were required to
agree to the PSA to continue using the Service. But this is a factual contention that is not alleged
in the FAC and therefore cannot be the basis for granting Google's motion to dismiss. *N. Star
Int'l*, 720 F.2d at 581 ("The purpose of a motion to dismiss under rule 12(b)(6) is to test the legal
sufficiency of the complaint. We need not reach issues for which there is no foundation in the
complaint."). Google has not demonstrated that it would be unreasonable to infer from the FAC's
allegations that Plaintiffs have not agreed to the PSA. Google's motion to dismiss Plaintiffs'
breach of contract claim on the basis that the parties entered into a novation is therefore DENIED.

### 3. Voluntary Payment

Google moves to dismiss Plaintiffs' breach of contract claim on the ground that Plaintiffs
made voluntary payments to Google with the knowledge of all relevant facts underlying their
claim. Mot. 11-12. Plaintiffs respond that dismissal is inappropriate because there are disputed
facts about whether their payments were voluntary. Opp'n 14-15.

Under the voluntary payments doctrine, "[p]ayments voluntarily made, with knowledge of
the facts, cannot be recovered." *Steinman v. Malamed*, 185 Cal. App. 4th 1550, 1557 (Cal. Ct.
App. 2010) (citing *W. Gulf Oil Co. v. Title Ins. & Tr. Co.*, 92 Cal. App. 2d 257, 265 (Cal. Ct. App.
1949)). However, "[p]ayments of illegal claims enforced by duress, coercion or compulsion,
when the payor has no other adequate remedy to avoid it, will be deemed to have been made
involuntarily and may be recovered, but the payment must have been enforced by coercion and
there must have been no other adequate means available to prevent the loss." *W. Gulf Oil,* 92 Cal.

United States District Court
Northern District of California

1  App. 2d at 265. "Duress for this purpose is shown 'where, by reason of the peculiar facts a

2  reasonably prudent man finds that in order to preserve his property or protect his business interests

3  it is necessary to make a payment of money which he does not owe and which in equity and good

4  conscience the receiver should not retain, [and thus] he may recover it.'" *Steinman,* 185 Cal. App.

5  4th at 1558 (quoting *W. Gulf Oil,* 92 Cal. App. 2d at 266). Furthermore, to demonstrate economic

6  duress, "the party insisting on payment must act wrongfully, with the knowledge that the claim

7  asserted is false." *Id.* at 1559.

8      Here, the facts pled show that Plaintiffs made payments with knowledge of the relevant

9  facts. Plaintiffs contend, however, the payments were involuntary. The Court first addresses the

10  allegations concerning Mr. Rabin and then turns to those concerning Mr. Graves.

11      The Court finds Mr. Rabin's allegations insufficient to plausibly suggest that he made his

12  payments under duress. Mr. Rabin alleges that Google emailed him "regarding the breach of the

13  free-for-life promise" in April 2022 but did not suspend the Service until September 2022. FAC

14  ¶¶ 63, 65, 76. He alleges that he provided his payment information the same day Google

15  suspended the Service. FAC ¶¶ 73-74. Although Mr. Rabin alleges that he had no practical

16  alternative but to pay for the Service, FAC ¶ 75, he does not allege sufficient facts to plausibly

17  support this assertion. The closest he comes is to allege that he had "integrated his business with

18  Google Workspace services." FAC ¶ 75. But this allegation falls short because Mr. Rabin does

19  not allege any facts about why he did not transition his business to an alternative service in the

20  five months between being put on notice of the alleged breach and making his first payment. *Cf.*

21  *Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 980 (N.D. Cal. 2019) (granting motion to

22  dismiss based on voluntary payments doctrine where plaintiff failed to explain why he did not

23  change insurance carriers after learning about his carrier's alleged breach). Mr. Rabin's assertion

24  of duress is further rendered implausible by his failure to allege that he ever challenged his

25  obligation to pay the fees or otherwise allege why he could not raise such a challenge. *See*

26  *Steinman*, 185 Cal. App. 4th at 1558 (payment not involuntary where plaintiff failed to challenge

27  the payment until the last minute). Taken together, the facts alleged in the FAC render

28  implausible that Mr. Rabin's payments were involuntary.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Mr. Graves's allegations are likewise insufficient to plausibly suggest that Mr. Graves made his payments under duress.  Like Mr. Rabin, Mr. Graves alleges that Google emailed him in early 2022 "communicating that Google was going to breach its free-for-life promise."  FAC ¶ 87. Mr. Graves alleges that he provided his payment information in June 2022 and that Google began charging him in September 2022.  FAC ¶ 90.  Like Mr. Rabin, Mr. Graves alleges that he had no practical alternative but to pay for the Service because "[he] had become heavily integrated with Google's Workspace services."  FAC ¶ 90.  But Mr. Graves's "heavy" integration with the services does not support an inference that Mr. Graves's payment was necessary "to preserve his property or protect his business interests," as is required to plausibly allege duress.  *See Steinman*, 185 Cal. App. 4th at 1558.  Mr. Graves does not allege any facts to suggest that he had business interests tied to his use of the Service.  Nor does he allege that he would have lost any property if he refused to pay.  To the contrary, he alleges that he could have transitioned to another service. FAC ¶ 89.  Moreover, like Mr. Rabin, Mr. Graves fails to allege that he ever challenged the fees before paying them.  Therefore, like Mr. Rabin, Mr. Graves has not plausibly alleged that his payments were involuntary.

Because allegations in the FAC show that Plaintiffs made their payments for the Service with knowledge of the relevant facts and have not alleged facts to plausibly suggest that the payments were involuntary, Plaintiffs' breach of contract claim is barred by the voluntary payments doctrine as currently alleged.  Google's motion to dismiss Plaintiffs' breach of contract claim on this basis is GRANTED WITH LEAVE TO AMEND.

### 4.  Available Remedies

Google moves to dismiss Plaintiffs' breach of contract claim on the ground that Plaintiffs have no available remedies.  Mot. 13-15.  Google argues that Plaintiffs cannot recover contractual damages because the Agreements contain a limitation-of-liability provision, and that Plaintiffs are not entitled to specific performance because they have not alleged adequate consideration.  *Id.* Plaintiffs respond that the limitation-of-liability provision in the 2009 Agreement does not apply because Google has not terminated the Service and because the provision is limited to circumstances not at issue here.  Opp'n 15-16.  Plaintiffs argue that the limitation-of-liability

provision in the 2012 Agreement does not apply because it expressly excludes direct damages.
Opp'n 16.  Regarding their request for specific performance, Plaintiffs argue that they provided
consideration in the form of beta testing and access to their data.  Opp'n 17.

The Court first considers whether Plaintiffs have plausibly alleged their entitlement to
contractual damages and then turns to whether they have plausibly alleged their entitlement to
specific performance.

### a.  Contractual Damages

The Court begins with Google's argument that limitation-of-liability provisions in the
Agreements bar Plaintiffs' recovery of contractual damages.  "With respect to claims for breach of
contract, limitation of liability clauses are enforceable unless they are unconscionable, that is, the
improper result of unequal bargaining power or contrary to public policy."  *Food Safety Net Servs.
v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012).  No one contends that the
provisions at issue here are unconscionable.  At dispute is whether the limitation of-liability
provisions' terms apply to Plaintiffs' breach of contract claim.  Because the provisions of the 2009
and 2012 Agreements have materially different language, the Court takes them in turn.  For the
reasons discussed below, the Court finds that the 2009 Agreement bars Mr. Rabin's recovery of
contractual damages, but the 2012 Agreement does not bar Mr. Graves's recovery of those
damages.

The parties raise two provisions in the 2009 Agreement as relevant to the Court's analysis
of Google's alleged liability for breach of that Agreement.  The first provision reads:

> 16. **<u>Termination</u>**. . . . Customer agrees that Google shall not be liable
> to Customer, any End User, or any third party for any modification,
> suspension, or termination of the Service.

2009 Agreement § 16.  By its terms, this provision applies to Google's "modification, suspension,
or termination" of the Service.  As the Court noted above in Section III.A.1, Plaintiffs have
plausibly alleged that Google continues to offer the Service.  This first provision therefore does
not apply as Plaintiffs' claims are currently alleged.

The second provision does, however, limit Google's liability for breach of the 2009
Agreement under the alleged circumstances.  It reads:

United States District Court
Northern District of California

1

2
3
4
5
6
7
8
9
10

> 15. **Limitation of Liability**. IN NO EVENT WILL GOOGLE OR ITS LICENSORS BE LIABLE FOR ANY DIRECT, INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES, AND INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR INTERRUPTION OF USE OR FOR LOSS OR INACCURACY OR CORRUPTION OF DATA, LOST PROFITS, OR COSTS OF PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES, HOWEVER CAUSED (INCLUDING BUT NOT LIMITED TO USE, MISUSE, INABILITY TO USE, OR INTERRUPTED USE) AND UNDER ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO CONTRACT OR TORT AND WHETHER OR NOT GOOGLE WAS OR SHOULD HAVE BEEN AWARE OR ADVISED OF THE POSSIBILITY OF SUCH DAMAGE REGARDLESS OF WHETHER ANY REMEDY SET FORTH IN THIS AGREEMENT FAILS OF ITS ESSENTIAL PURPOSE; OR FOR ANY CLAIM ALLEGING INJURY RESULTING FROM ERRORS, OMISSIONS, OR OTHER INACCURACIES IN THE SERVICE OR DESTRUCTIVE PROPERTIES OF THE SERVICE.

11   2009 Agreement § 15.

12         Under the plain language of this provision, Google cannot be held liable for any direct or

13   indirect damages under any theory of liability.  "Limitation of liability clauses 'have long been

14   recognized as valid in California.'"  *Lewis*, 244 Cal. App. at 125 (quoting *Food Safety Net Servs.*,

15   209 Cal. App. 4th at 1126).  "As in the present case, these clauses are appropriate when one party

16   is offering a service for free to the public."  *Id.* (citing *Markborough California, Inc. v. Superior*

17   *Court* 227 Cal. App. 3d 705, 714 (1991)).  Plaintiffs argue that this provision "applies only to

18   claims related to 'interruption of use or for loss or inaccuracy or corruption of data, lost profits, or

19   costs of procurement of substitute goods or services.'"  Opp'n 16 (quoting 2009 Agreement § 15).

20   But this argument ignores that the provision states that it applies to claims "including, but not

21   limited to" the listed claims.  2009 Agreement § 15.  The Court therefore finds that the provision

22   precludes Google from being held liable for damages for breach of the 2009 Agreement under the

23   facts alleged.  *Accord. Lewis*, 244 Cal. App. 4th at 126 (holding that trial court properly sustained

24   the demurrer because limitation of liability clause applied to the plaintiff's claim).

25         The Court now turns to the 2012 Agreement.  The parties again raise two relevant

26   provisions.  The first reads:

27
> Google shall have the right to change, suspend or discontinue any aspect of the Service at any time, without notice.

28

United States District Court
Northern District of California

14

2012 Agreement § 1.2(a).  Similar to Section 16 of the 2009 provision, which applies Google's "modification, suspension, or termination" of the Service, this provision applies when Google "change[s], suspend[s], or discontinue[s]" the Service.  Because Plaintiffs allege that Google has continued to offer the Service, this provision is not implicated.

The second provision reads:

> 13.1 <u>Limitation on Indirect Liability</u>. NEITHER PARTY WILL BE LIABLE UNDER THIS AGREEMENT FOR LOST REVENUES OR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES, EVEN IF THE PARTY KNEW OR SHOULD HAVE KNOWN THAT SUCH DAMAGES WERE POSSIBLE AND EVEN IF DIRECT DAMAGES DO NOT SATISFY A REMEDY.

2012 Agreement § 13.1.  By its terms, this provision is limited to "lost revenues or indirect, special, incidental, consequential, exemplary, or punitive damages."  It does not apply to direct damages.  Because Plaintiffs' request for relief includes direct damages, FAC ¶ 132, Plaintiffs' breach of contract claim—to the extent it is predicated on the 2012 Agreement—is not subject to dismissal on the basis that the 2012 Agreement precludes Google's liability.  *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *46 (N.D. Cal. Aug. 30, 2017) (denying motion to dismiss to extent complaint seeks direct damages where contract limited liability only for punitive, indirect, incidental, special, consequential, or exemplary damages).

In sum, the Court finds that the different limitation-of-liability provisions in the 2009 and 2012 Agreements yield different results for the parties to those respective agreements.  The 2009 Agreement precludes recovery of damages for breach of that Agreement based on the facts alleged.  Thus, Mr. Rabin has not alleged his entitlement to contractual damages, as he is a party to the 2009 Agreement.  The Court will therefore analyze below whether Mr. Rabin has sufficiently alleged his entitlement to specific performance to determine whether his claim for breach of the 2009 Agreement is subject to dismissal on the basis that he has not alleged entitlement to any relief.  The 2012 Agreement, on the other hand, precludes recovery only for certain forms of damages, not including direct damages.  Thus, Mr. Graves has alleged his entitlement to at least direct damages.  Mr. Graves's claim for breach of the 2012 Agreement is

1    therefore not subject to dismissal on the basis that is not entitled to relief for his claim.

2                           **b.  Specific Performance**

3            Google argues that Plaintiffs are not entitled to specific performance because they have not

4    alleged adequate consideration.  Adequacy of consideration is a prerequisite to the granting of

5    specific performance.  *Lamb v. California Water & Tel. Co.*, 21 Cal. 2d 33, 44 (1942); *see also*

6    Cal. Civ. Code § 3391 ("Specific performance cannot be enforced against a party . . . if he has not

7    received an adequate consideration for the contract.").  "'Adequate consideration,' . . . does not

8    necessarily mean the highest price obtainable, but a price that is fair and reasonable under all the

9    circumstances; it is always peculiarly a question of fact for the trial court to determine, in the light

10   of all the facts and circumstances of each particular case."  *Boulenger v. Morison*, 88 Cal. App.

11   664, 669 (1928).  "A challenge based on these principles must be considered in view of the entire

12   circumstances, including the object to be obtained by the contract and the relationship of the

13   parties and must be determined as of the time the contract was made."  *Berkeley Lawn Bowling*

14   *Club v. City of Berkeley*, 42 Cal. App. 3d 280, 290 (1974) (citations omitted).

15           Here, the Court cannot say as a matter of law that Plaintiffs have failed to plead adequate

16   consideration to support their requests for specific performance.  Under the 2009 Agreement, Mr.

17   Rabin agreed to allow Google to use his data and to provide Google "[r]esults, analyses or other

18   information generated in benchmarking and/or performance testing of the Service" at Google's

19   request.  2009 Agreement §§ 5.2, 8.  Similarly, and relevant to both Mr. Rabin and Mr. Graves,

20   Plaintiffs allege that "Google . . . received benefits from . . . users via Google's collection and use

21   of their personal and business data."  FAC ¶¶ 16, 115.  Plaintiffs allege that, in exchange for these

22   benefits, Google agreed to provide the Service to Plaintiffs for free for as long as the Service

23   remained available.  *See* FAC ¶ 115-117.  Considering the alleged "object of the agreement"—

24   Google's access to Plaintiffs' data and other information in exchange Plaintiffs' access to the

25   Service—Plaintiffs have pled facts showing that they provided adequate consideration at the time

26   of the agreement to support a requpest for specific performance.  *See Berkeley Lawn Bowling*

27   *Club*, 42 Cal. App. 3d at 290 (court must consider the relationship of the parties and the object of

28   the agreement).  Because both Plaintiffs have plausibly alleged their entitlement to specific

United States District Court
Northern District of California

16

1   performance, neither Plaintiff's breach of contract claim is subject to dismissal on the basis of

2   failure to allege entitlement to relief.

3                                    *          *          *

4        Google's motion to dismiss Plaintiffs' breach of contract claim under the voluntary

5   payments doctrine is GRANTED WITH LEAVE TO AMEND.  Google's motion to dismiss this

6   claim on each of the other bases is DENIED.

7        **B.    Breach of Implied Covenant of Good Faith and Fair Dealing (Claim 2)**

8        Plaintiffs' second claim asserts that Google breached the implied covenant of good faith

9   and fair dealing in its exercise of the discretion allowed to it in the Agreements.  FAC ¶¶ 126-28.

10  Google argues that this claim fails for three independent reasons: (1) the covenant of good faith

11  and fair dealing cannot prohibit conduct that the Agreements expressly permitted; (2) the

12  Agreements' limitation-of-liability provisions bar Plaintiffs' claims; and (3) the claim is

13  duplicative of Plaintiffs' breach of contract claim.  Mot. 14-16.  Plaintiffs respond that the

14  Agreements did not permit Google's conduct.  Opp'n 18.  Plaintiffs also clarify that their claim for

15  breach of the implied covenant of good faith and fair dealing is meant to respond to any argument

16  that the Agreements granted Google discretion.  *Id.*  Plaintiffs argue that any limitation of liability

17  in the Agreements fails to preclude this claim for the same reasons that it fails to preclude their

18  claim for breach of contract.  *Id.*

19       Under California law, every contract includes an implied covenant of good faith and fair

20  dealing.  *Carma Devs.*, 2 Cal. 4th at 371.  "But the covenant 'exists merely to prevent one

21  contracting party from unfairly frustrating the other party's right to receive the benefits of the

22  agreement actually made.'"  *Prager Univ. v. Google LLC*, 85 Cal. App. 5th 1022, 1039 (2022)

23  (quoting *Guz v. Bechtel Nat. Inc.* 24 Cal. 4th 317, 349 (2000) (emphasis omitted)).  "The implied

24  covenant cannot, however, 'impose substantive duties or limits on the contracting parties beyond

25  those incorporated in the specific terms of their agreement.'"  *Id.* (quoting *Hewlett-Packard Co. v.

26  Oracle Corp.*, 65 Cal. App. 5th 506, 554 (2021) (quoting *Guz*, 24 Cal. 4th at 349-350)).  "[The

27  covenant of good faith and fair dealing] will not be read into a contract to prohibit a party from

28  doing that which is expressly permitted by the agreement itself."  *Id.* (quotation marks and citation

United States District Court
Northern District of California

17

omitted).

The Court finds that Plaintiffs have not stated a claim for breach of the implied covenant of good faith and fair dealing.  The 2009 and 2012 Agreements granted Google complete discretion to terminate the Agreement or the Service: those agreements state that "Google may at any time and for any reason terminate this Agreement and/or terminate the provision of all or any portion of the Service."  2009 Agreement § 16; 2012 Agreement § 11.2.  California courts have consistently held that where a contract expressly grants such unfettered discretion to one party, the party's exercise of that discretion cannot amount to a breach of the implied covenant of good faith and fair dealing.  *See Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1120-21 (2008) ("[A]lthough it has been said the implied covenant finds particular application in situations where one party is invested with a discretionary power affecting the rights of another, if the express purpose of the contract is to grant unfettered discretion, and the contract is otherwise supported by adequate consideration, then the conduct is, by definition, within the reasonable expectation of the parties and can never violate an implied covenant of good faith and fair dealing.") (cleaned up); *Carma Devs.*, 2 Cal. 4th at 374 (1992) ("As to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct."); *accord Enhanced Athlete Inc. v. Google LLC*, 479 F. Supp. 3d 824, 833 (N.D. Cal. 2020) (no breach of implied covenant where defendants removed plaintiff's videos and accounts from their platform because agreements granted the defendants "sole discretion" to determine whether plaintiff's videos were harmful or dangerous, or otherwise violated the terms of service, and to "discontinue" service "at any time").

Plaintiffs' breach of implied covenant claim is subject to dismissal even though the parties dispute whether Google ever exercised its discretion to terminate the Agreement or the Service.  Plaintiffs contend that Google breached the express terms of their respective Agreements by charging them for the Service.  Google disputes this contention on the ground that the Agreements permitted Google to terminate the Service and the Agreement.  The Court found in Part III.A.1 that Plaintiffs had plausibly alleged that Google violated the express terms of the Agreements by charging Plaintiffs for the Service without ever terminating the Agreements.  This finding does

United States District Court
Northern District of California

1  not preclude dismissal of Plaintiffs' breach of the implied covenant claim because if Google

2  charged Plaintiffs without ever terminating the Agreements, then it did not exercise discretion in

3  violation of the implied covenant.  It simply may have breached the Agreements' express terms.

4         Accordingly, whether Plaintiffs' allegation is that Google terminated the Agreements

5  before charging them or charged them without terminating the Agreements at all, Plaintiffs have

6  not stated a claim for breach of the implied covenant of good faith and fair dealing.  Accordingly,

7  Google's motion to dismiss this claim is GRANTED WITHOUT LEAVE TO AMEND.

8         **C.    Unjust Enrichment/Quasi-Contract (Claim 3)**

9         Plaintiffs' third claim is for unjust enrichment/quasi-contract.  Google argues that the claim

10  must be dismissed because (1) unjust enrichment is not a standalone cause of action in California;

11  (2) the claim is duplicative of Plaintiffs' breach of contract claim; and (3) the claim is barred under

12  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), because Plaintiffs have an

13  adequate remedy at law.  Mot. 16-17, 20-21.  Plaintiffs respond that they have properly pled their

14  claim as a quasi-contract claim seeking restitution and that they have pled it in the alternative to

15  their claim for breach of contract.  Opp'n 24.  Plaintiffs do not dispute that their claims for breach

16  of contract cover the same subject matter as their quasi-contract claim, but they ask the Court to

17  allow their claim to proceed.  *Id.*  Plaintiffs also respond that *Sonner* does not preclude pleading

18  their equitable claims in the alternative.  *Id.* at 23-24.  The Court first addresses whether Plaintiffs'

19  unjust enrichment claim is improperly pled as a standalone claim, then turns to whether the claim

20  must be dismissed as duplicative, and finally whether *Sonner* bars the claim.

21         The Court finds that Plaintiffs' unjust enrichment claim is not improperly pled as a

22  standalone claim.  The Ninth Circuit has explained that "[w]hen a plaintiff alleges unjust

23  enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking

24  restitution.'"  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting

25  *Rutherford Holdings, LLC v. Plaza Del Rey,* 223 Cal. App. 4th 221, 231 (2014)).  Here, Plaintiffs

26  have pled that Google was "unjustly enriched at the expense of Plaintiffs and other members of the

27  Class who signed up for Workspace under Google's promise of continuing free Workspace

28  Service."  FAC ¶ 137.  Plaintiffs seek "restitution of, disgorgement of, and/or the imposition of a

United States District Court
Northern District of California

1   constructive trust upon all profits, benefits, and other compensation obtained by Google as a result

2   of Google's misconduct."  FAC ¶ 145.  The Court construes these allegations as pleading a claim

3   for quasi-contract seeking restitution and therefore finds that Plaintiffs' unjust enrichment claim is

4   not subject to dismissal on the basis that it is improperly pled as a standalone claim.  *See Astiana*,

5   783 F.3d at 762.

6        The Court next turns to Google's assertion that Plaintiffs' claim must be dismissed as

7   duplicative of Plaintiffs' breach of contract claim.  The Court agrees with Plaintiffs that they may

8   assert an unjust enrichment claim in the alternative to the breach of contract claim.  *Cf. Astiana*,

9   783 F.3d at 762 ("To the extent the district court concluded that the cause of action was

10  nonsensical because it was duplicative of or superfluous to [plaintiff's] other claims, this is not

11  grounds for dismissal" (citing Fed. R. Civ. P. 8(d)(2))).  But to do so they must allege facts to

12  suggest that the parties do not have an enforceable contact.  *See Klein v. Chevron U.S.A., Inc.*, 202

13  Cal. App. 4th at 1388 ("A plaintiff may not, however, pursue or recover on a quasi-contract claim

14  if the parties have an enforceable agreement regarding a particular subject matter.").

15       Here, Plaintiffs have failed to state a claim for unjust enrichment because they have alleged

16  no facts to support an inference that the Agreements are unenforceable.  *See Solano v. Am's*

17  *Servicing Co.*, No. 2:10-CV-02426-GEB, 2011 WL 4500874, at *9 (E.D. Cal. Sept. 27, 2011)

18  (dismissing unjust enrichment claim where "[n]one of Plaintiffs' allegations plausibly suggest that

19  valid contracts did not exist between the parties.").  Plaintiffs' sole allegation on this point is a

20  bald assertion that "[t]his cause of action is pled in the alternative."  FAC ¶ 136.  This is

21  insufficient to plead the claim in the alternative because it contains no facts that would support the

22  alternative pleading.  *See Dolce Int'l/San Jose, LLC v. City of San Jose, California*, No. 5:20-CV-

23  03774-EJD, 2020 WL 5910066, at *3 (N.D. Cal. Oct. 6, 2020) ("Because [Plaintiff] fails to allege

24  that the express contract governing the Parties conduct may be unenforceable or invalid, the

25  Complaint fails to state a claim for unjust enrichment, even in the alternative.").  The Court

26  therefore finds that Plaintiffs unjust enrichment claim is subject to dismissal on the basis that

27  Plaintiffs have failed to plausibly allege that the Agreements are unenforceable.

28       The Court also finds that Plaintiffs' unjust enrichment claim must be dismissed because

United States District Court
Northern District of California

Plaintiffs have not alleged that they lack an adequate remedy at law.  In *Sonner*, the Ninth Circuit held that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action."  971 F.3d at 844.  "[M]ost district courts applying *Sonner* have . . . understood it to require that a plaintiff must, at a minimum, *plead* that she lacks adequate remedies at law if she seeks equitable relief."  *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (internal quotations and citation omitted); *see also Day v. Advanced Micro Devices, Inc.*, No. 22-CV-04305-VC, 2023 WL 2347421, at *1 (N.D. Cal. Mar. 2, 2023) ("[A]t least under California law, an unjust enrichment claim must be pleaded in the alternative, and plaintiffs must allege why legal remedies are inadequate." (citing *Sonner*, 971 F.3d at 844 (9th Cir. 2020)).  Here, Plaintiffs have not pled facts to suggest that they lack an adequate remedy at law as to their unjust enrichment claim.  And it is not apparent from Plaintiffs' requested relief—"restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Google as a result of Google's misconduct"—that damages would provide an inadequate remedy.  The Court therefore finds that Plaintiffs unjust enrichment claim is subject to dismissal on the basis that Plaintiffs have failed to plausibly allege that they lack an adequate remedy at law.

Google's motion to dismiss Plaintiffs' unjust enrichment claim is GRANTED WITH LEAVE TO AMEND because Plaintiffs' have not alleged that the Agreements are unenforceable or that Plaintiffs lack an adequate remedy at law.  The Court cautions that pleading a quasi contract for a free service forever may be a futile exercise.

### D.   Violation of Unfair Competition Law (Claim 4)

Plaintiffs' fourth claim alleges that Google violated California's Unfair Competition Law (UCL).  The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200; *see also Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999).  Because the statute is written in the disjunctive, it applies separately to business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003).  Plaintiffs contend that Google's conduct has violated

1    the unlawful and unfair prongs.

2        Google argues that Plaintiffs' UCL claim is prohibited under *Sonner* because Plaintiffs

3    have not alleged that they lack an adequate remedy at law and their UCL claims are based on the

4    same factual predicates as their legal claims.  Mot. 20-22.  Google also argues that Plaintiffs have

5    failed to adequately plead unlawful-prong and unfair-prong violations.  *Id.* at 17-20.  The Court

6    addresses each argument in turn.

7            **1.  Adequate Remedy at Law**

8        Google argues that Plaintiffs' UCL claim must be dismissed because Plaintiffs have failed

9    to allege that they lack an adequate remedy at law.  Mot. 21-22.  Plaintiffs respond that "the

10   remedies available to [them] under their equitable claims are not necessarily identical to those

11   available under their contract claims" and they note that they seek prospective injunctive relief

12   under the UCL.  Opp'n 23.

13       As the Court set out above in its discussion of Plaintiffs' claim for unjust enrichment, a

14   plaintiff seeking equitable relief must, at a minimum, allege that he lacks adequate remedies at

15   law.  *E.g.*, *Johnson*, 2022 WL 74163, at *3.  This is true, even when the equitable relief sought is

16   injunctive relief.  *See Zeiger v. Wellpet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021); *see also*

17   *In re Macbook Keyboard Litig.*, 5:18-cv-02813-EJD, 2020 WL 5047253, at *3 (N.D. Cal. Oct. 13,

18   2020) (collecting cases).  Here, Plaintiff seeks restitution and injunctive relief under the UCL.  The

19   Court addresses each remedy in turn.

20       The Court finds that Plaintiffs have not sufficiently alleged that that they lack an adequate

21   remedy at law to pursue their request for restitution.  As a remedy for Google's alleged UCL

22   violations, Plaintiffs seek an order "granting restitution to Plaintiffs and the Class in an amount to be

23   proven at trial."  FAC ¶ 155.  But Plaintiffs fail to plead any facts as to why the damages they seek

24   under their breach of contract claim is an inadequate remedy.  Google's request to dismiss Plaintiffs'

25   UCL claim on the basis that Plaintiffs' have failed to allege that they lack an adequate remedy at law is

26   therefore GRANTED WITH LEAVE TO AMEND to the extent the claim seeks restitution.  *See*

27   *Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2021 WL 3487117, at *12-13 (N.D. Cal. Aug. 9,

28   2021) (dismissing UCL claim to the extent it seeks restitution or disgorgement because plaintiff failed

United States District Court
Northern District of California

22

to plead specific facts showing that damages are inadequate or incomplete).

The Court likewise finds that Plaintiffs have not sufficiently alleged that they lack an adequate remedy at law to pursue their request for injunctive relief.  As with claims seeking equitable restitution, claims seeking injunctive relief are subject to dismissal where a Plaintiff fails to allege that it lacks an adequate remedy at law.  *See Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1121 (C.D. Cal. 2021).  Thus, courts in this Circuit have granted motions to dismiss claims seeking prospective injunctive relief where the Plaintiff has failed to plausibly allege difficulty in quantifying damages.  *See id.* at 1121-22 (collecting cases).   Here, Plaintiffs request that the Court "order[] Google to honor its promises of continuing free service to Plaintiffs and the Class."  FAC ¶ 156.  But Plaintiffs fail to allege facts showing that a legal remedy would be inadequate to compensate them for their ongoing lack of access to a free Service.  Accordingly, Google's request to dismiss Plaintiffs' UCL claim on the basis that Plaintiffs' have failed to allege that they lack an adequate remedy at law is GRANTED WITH LEAVE TO AMEND to the extent the claim seeks injunctive relief.

Although the Court agrees with Google that Plaintiffs are not entitled to seek injunctive relief because they have failed to allege an inadequate remedy at law, the Court notes that it finds unconvincing Google's alternative argument that Plaintiffs' request for injunctive relief is barred as duplicative of their request for specific performance.  To support its argument, Google relies on two cases in which a court denied injunctive relief because it was duplicative of relief the court had already granted.  *See Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.*, 534 F. Supp. 2d 1290, 1325 (S.D. Fla. 2008) (denying motion for preliminary injunction as moot because the court had already granted the same remedy in the form of a decree of specific performance); *California v. Trump*, 963 F.3d 926, 949 (9th Cir. 2020) (finding no abuse of discretion where "district court denied the States' request for a permanent injunction primarily because the relief sought was duplicative of the relief the district court had already granted in [another] matter").  These cases stand for the proposition that "Plaintiff may not be awarded the same remedy, albeit under different theories, twice."  *Liberty Mut. Ins. Co.*, 534 F. Supp. 2d at 1325.  This proposition has no applicability here, where the Court has not yet granted any relief.

In sum, Google's motion to dismiss Plaintiffs' UCL claim is GRANTED WITH LEAVE TO

AMEND on the basis that Plaintiffs have failed to plausibly allege that they lack an adequate remedy at law.

### 2. Unlawful Prong

Google argues that Plaintiffs have failed to state a claim under UCL's unlawful prong because Plaintiffs have failed to allege a predicate violation.  Mot. 17-19.  Regarding Plaintiffs' deceit claim, Google argues that Plaintiffs have failed to meet the particularity requirements of Rule 9(b).  Mot. 18-19.  Plaintiffs respond that their claims for breach of contract and breach of the implied covenant of good faith and fair dealing provide the predicate violations for their unlawful-prong claim.  Opp'n 19.  Plaintiffs do not attempt to rebut Google's argument that they failed to plead deceit.  *See id.* at 19-24.

The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law."  *Cel-Tech*, 20 Cal. 4th at 180 (internal quotations and citation omitted). The UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Id.* (internal quotations and citation omitted).  Where a plaintiff fails adequately to allege an unlawful act upon which to base a derivative UCL claim, the Plaintiff has not stated a claim under the unlawful prong of the UCL.  *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) (holding that "[a] defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having violated another law").

Plaintiffs rely on three alleged predicate violations to support their unlawful prong claim on Google's alleged (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) deceit in violation of California Civil Code Sections 1709 and 1710.  FAC ¶ 152. Each purported violation fails to support Plaintiffs' claim because Plaintiffs have not plausibly alleged the violation.

The Court explained above in Parts III.A and III.B that Plaintiffs have failed to plausibly allege breach of contract or breach of the implied covenant of good faith and fair dealing.  These alleged breaches therefore cannot serve as predicate violations for the underlying UCL claim.

Turning to deceit as a predicate violation, Google argues in its opening brief that Plaintiffs

failed to adequately allege deceit, Mot. 18-19, and Plaintiffs offer no response in opposition, *see* Opp'n 19 (relying only on breach of contract and breach of the implied covenant of good faith and fair dealing as "proper predicates").  The Court finds that Plaintiffs have thus abandoned deceit as a basis for their unlawful prong claim.  *See Qureshi v. Countrywide Home Loans, Inc.*, No. 09–4198, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010) (deeming plaintiff's failure to address in opposition brief claims challenged in a motion to dismiss, an "abandonment of those claims").

Google's motion to dismiss Plaintiffs' unlawful-prong claim is GRANTED WITH LEAVE TO AMEND on the basis that Plaintiffs have failed to plausibly allege a predicate violation.

### 3.  Unfair Prong

Google argues that Plaintiffs fail to state a claim under the UCL's unfair prong because Google's conduct was permitted under the Agreements.  Mot. 19-20.  Plaintiffs respond that their unfair-prong claim should survive because their allegations are sufficient to independently state a claim under both the "balancing" and "tethering" test.  Opp'n 20-23.

The unfair prong of the UCL "creates a cause of action for a business practice that is unfair even if not proscribed by some other law."  *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019).  While the definition of "unfair" is "in flux," California courts have coalesced around two tests.  *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007).  Some courts apply a balancing test in which the court "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).  Others apply the "tethering test," which asks whether the unfair act is "tethered to some legislatively declared policy" or whether there is "proof of some actual or threatened impact on competition."  *Lozano*, 504 F.3d at 735.

The Court finds that Plaintiffs have plausibly alleged that Google's conduct violated the unfair prong of the UCL.  Conduct amounting to a breach of contract can form the basis of an unfair-prong claim, provided the conduct is also unfair.  *See Cabo Brands, Inc. v. MAS Beverages, Inc.*, No. 8:11-CV-1911-ODW (ANx), 2012 WL 2054923, at *5 (C.D. Cal. June 5, 2012) (citing *Puentes v. Wells Fargo Home Mortg., Inc.,* 160 Cal. App. 4th 638, 645 (2008)).  Thus, a plaintiff "adequately plead[s] its section 17200 claim under the unfair prong" where the plaintiff alleges

United States District Court
Northern District of California

that "[defendant] enjoyed the benefits of [plaintiff]'s performance of [their agreement] without carrying out its part of the contract." *Id.* Here, Plaintiffs allege that Google induced them to sign up for the Service by promising free access for as long as the Service is available and then reneged on that promise after it enjoyed the benefits of Plaintiffs' beta testing. FAC ¶ 149; *see also* FAC ¶¶ 1, 16, 55, 79. These allegations plausibly plead a violation of the unfair prong of the UCL. *See Cabo Brands*, 2012 WL 2054923, at *5; *see also Eventbrite, Inc. v. M.R.G. Concerts Ltd.*, No. 20-cv-04040-SI, 2020 WL 7013597, at *7 (N.D. Cal. Nov. 27, 2020) (denying motion to dismiss unfair-prong claim where plaintiff alleged that defendant unilaterally decided not to make good on payments to which plaintiff understood itself to be entitled under their contract); *cf. In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 921-22 (9th Cir. 2014) (reversing dismissal of unfair-prong claim where plaintiffs alleged that defendant charged them a premium for advertised features and then discontinued access to those features).

The Court finds that Plaintiffs have plausibly alleged that Google engaged in conduct that violates the unfair prong of the UCL. As discussed above in Part III.D.1, however, Plaintiffs' unfair-prong claim may not proceed as currently pled because Plaintiffs have not alleged that they lack an adequate remedy at law.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Google's motion to dismiss Plaintiffs' claim for breach of contract (Claim 1) is GRANTED WITH LEAVE TO AMEND to allege facts showing that Plaintiffs' payments were not voluntary.

2.  Google's motion to dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Claim 2) is GRANTED WITHOUT LEAVE TO AMEND.

3.  Google's motion to dismiss Plaintiffs' unjust enrichment/quasi-contract claim (Claim 3) is GRANTED WITH LEAVE TO AMEND on the basis that Plaintiffs have not alleged that the Agreements are unenforceable or that Plaintiffs lack an adequate remedy at law.

4.  Google's motion to dismiss Plaintiffs' UCL unlawful-prong claim (Claim 4) is GRANTED WITH LEAVE TO AMEND for failure to allege an inadequate remedy at law and for

United States District Court
Northern District of California

failure to allege conduct sufficient to support an unlawful-prong claim.

5.  Google's motion to dismiss Plaintiffs' UCL unfair-prong claim (Claim 4) is GRANTED WITH LEAVE TO AMEND for failure to allege an inadequate remedy at law.

Dated:  June 15, 2023

_____

BETH LABSON FREEMAN
United States District Judge