April 19, 2024

<u>VIA ECF</u>

Magistrate Judge Nathanael Cousins
United States District Court, Northern District of California
280 South First Street
San Jose, CA 95113

Re: *Rabin, CPA, et al. v. Google, LLC*, Case No. 5:22-cv-4547-PCP

Dear Judge Cousins,

Pursuant to the Court's Civil Standing Order, the parties respectfully submit this joint letter regarding Plaintiffs' request for certain data regarding the proposed class.

**Plaintiffs' Statement**

This case arises out of Google's decision to begin charging for a software suite, now called Google Workspace, that it had promised would remain free to the class members, a group of customers who had, in essence, served as beta testers for the service. Plaintiffs allege that Google's decision to begin charging for this service breached its contracts with class members and violated California's Unfair Competition Law. On March 26, 2024, the Court denied Google's motion to dismiss Plaintiffs' Second Amended Complaint, and discovery is ongoing.

On September 27, 2023, Plaintiffs served requests for documents. Request No. 22 sought the following data points about the class members from Google's systems: (a) name, (b) mailing address, (c) contact email address, (d) corresponding Google account or other unique identifying number(s), (e) corresponding email addresses for their Workspace accounts, (f) the date(s) they signed up for Workspace, (g) the amount and timing of any payments for Workspace from January 1, 2022 to the present, (h) any refunds for such payments, and (i) the total Workspace users associated with the account as of September 30, 2023.

The requested data is relevant to class certification, *inter alia*, because it will show that class members are ascertainable (indeed, already identified within Google's records), help establish that direct notice to the class can be accomplished, and help Plaintiffs and their expert demonstrate that class damages can be calculated using the available information. *See, e.g., Holland-Hewitt v. Allstate Life Ins. Co.*, 343 F.R.D. 154, 180 (E.D. Cal. 2022) (granting motion to compel production of class data).

Google initially objected to producing any data for anyone other than the named plaintiffs. Following meet and confer sessions that began on November 29, 2023, Google eventually served supplemental responses, on February 15, 2024, representing that it had "conducted a reasonable search and has not identified documents reflecting the information requested regarding putative Class members." Google appeared to foreclose the possibility of providing even a sample of class

data, stating that it would only provide "aggregated data with respect to the number of accounts and revenue from those accounts" already identified in Google's discovery responses, and "will not agree to provide individual putative Class member data prior to class certification." Google also objected to the request as burdensome and to the request "to the extent" that it seeks documents that violate class members' privacy rights.

The parties met and conferred further on February 29, 2024 and discussed the possibility of a compromise, including potentially a sample production and stipulation. On March 5, 2024, Plaintiffs proposed a compromise whereby the parties would defer the production of parts (a)-(c) of the data requests (which call for personal identifying information) but stipulate that such data is available for the entire class, redact or defer production of part (e) as long as Google provided information sufficient to identify the total number of email addresses associated with each account, and produce the remaining data points for the class. This proposal addressed Google's asserted, albeit unsubstantiated, burden objection, and its expressed concerns about the privacy of absent class members. In contrast to the case cited in Google's section below, Plaintiffs seek only anonymized data at this stage; no privacy concerns are implicated.

Two weeks later, Google responded that it "is willing to provide a sample of 50 putative class members. For this sampling, Google is willing to provide the data points at RFP 22(f)–(j) and would omit or redact any data relating to RFP 22(a)–(e)." It did not respond to Plaintiffs' request that Google stipulate to the availability of the data withheld. Nor has Google ever suggested that any of the requested data, for any class members, is unavailable from its records.

Two days after receiving Google's response, Plaintiffs provided a counter-proposal, to be memorialized in a stipulation:

1. Google provides a list of unique identifiers for the class data, in the form of, for example, a number associated with each account;
2. Plaintiffs choose a sample of 100 from that list;
3. For this sample of 100, Google provides the data points at RFP 22(f)–(j), omits data relating to RFP 22(a), (b), and (c), and redacts any data relating to RFP 22(d) and (e), as long as Google provides information sufficient to identify the number of email addresses associated with each account;
4. Google stipulates that it possesses all of the data points requested in all of the subparts of RFP No. 22 for all potential class members;
5. Google confirms that billing address information is available for the entire class;
6. Google provides the same data set for Plaintiffs, without omissions or redactions;
7. Google confirms it will not use the non-production of full class data at this stage to support any argument opposing class certification; and
8. In the event a class is certified, Google provides the full class data within 30 days of the order certifying a class.

As the data request had been pending for nearly six months, Plaintiffs asked for a response by March 26, 2024. Google did not respond, and Plaintiffs followed up on March 27. On March 29, Google responded that it would respond to Plaintiffs' proposal "soon." On April 3, Plaintiffs sent Google a draft joint discovery letter and advised that they would file the letter on April 10.

2

On April 9, Google finally responded with a counter-proposal that rejected key parts of Plaintiffs' compromise proposal and necessitates the Court's assistance.

First, Google insists on choosing the accounts comprising the "sample." Under its proposal, *Google* itself would select 100 unique account identifiers (out of at least hundreds of thousands of class members), from which Plaintiffs would choose fifty; those fifty accounts would form the data set to be provided. There is no reason to adopt that procedure; Google has yet to explain why it cannot generate a bare list of account numbers. Second, Google refuses to stipulate that the requested data is available for all class members. Without a stipulation of availability, the small, non-random sample of class data is of limited use to Plaintiffs at class certification, making full production of the class data necessary. If Google cannot stipulate to the availability of the data, then the solution is to produce the full data so that the parties can assess the question themselves. This is now necessary because Google will not take this issue off the table: it would not commit to not argue class data unavailability in opposition to class certification, instead only agreeing to not raise its non-*production* of full class data in opposition to class certification, leaving open that Google might try to argue or imply that the data is somehow not fully available or accessible. Google's suggestion that it is agreeing to most of what Plaintiffs are seeking is absurd. Google wants to preserve a (dubious) potential argument that these very basic data points may not be available for some putative class members, without apparently even looking and without producing what it has. Finally, Google would not agree to produce the full class data within 30 days of an order certifying a class, instead reserving the right to wait until the very last day of fact discovery to make this production. This is unjustified and highly prejudicial to Plaintiffs, who Google knows would be squeezed in having their expert analyze the data in time for the trial expert disclosure deadline (*see* Dkt. 89; Scheduling Order).

The Court should order the full production of available class data at this time. In the alternative, the Court should order Google to produce an anonymized random sample of account data, confirm that all of the data is available for the class and stipulate to the other terms of the proposed stipulation set forth above, and make a witness available for a deposition concerning the availability of class data.

**Google's Statement**

The parties have largely worked through this issue and already agreed to a compromise by which Google will provide a sampling of putative class member data so that Plaintiffs can get an understanding of the types of data Google has available. Rather than continuing to work with Google in good faith to iron out the details, Plaintiffs rushed to the Court to file this unnecessary discovery motion.[1]

---

[1] Plaintiffs' accusations about Google's participation in discovery are utterly unfair. Google has engaged in numerous verbal and written communications with Plaintiffs' counsel attempting to resolve this and other issues without having to burden the Court. Contrary to Plaintiffs' account of discovery thus far, Google has provided substantive responses to Plaintiffs' interrogatory responses and proposed custodians and search terms for document production, among other things. *See* ECF No. 88 at 2–3. Google also agreed to extend the case schedule by five months to give

Google has agreed and stands ready to provide the following: a sample of data from 50 putative class members (of which Plaintiffs may choose the 50 from a larger subset, if they prefer, Google suggested 100). Google agrees to ***Plaintiffs'*** proposal that data values for (a)–(c) will not be included (but will be provided, as needed, post-certification), data values for (d) will be redacted, and Google will provide the data for each sample account associated with (f)–(j). Rather than providing redacted end-user emails for (e), Google proposed providing simply the number of end user accounts associated with each main account, which Google believes is the information Plaintiffs actually want (and Plaintiffs did not indicate otherwise). This framework provides the best balance between Plaintiffs' legitimate need for information to support their motion for class certification, putative class member privacy, and unnecessary discovery burden. Following certification, if a class is certified, the parties specifically negotiated a separate discovery period for Google to provide post-certification data (ECF No. 89 at 2), and Google will comply with the case schedule.

Plaintiffs are not entitled to more than what Google has already agreed to provide.

***Full Production Not Required Pre-Certification.*** Plaintiffs' request for the *full* production of data in response to RFP 22 is not well taken in light of the time and energy both sides have invested in reaching a compromise, and Plaintiffs' prior agreement to sampling. In any event, the Court should not order production of this data prior to certification of any class. *See, e.g.*, *Johnson v. Sky Chefs, Inc.*, 2013 WL 11079297, at *2–3 (N.D. Cal. May 24, 2013) (declining to order class-wide discovery on "putative class member contact information" because the purported need pre-class certification "does not outweigh the privacy rights of potential class members") (citations omitted). In this case, post-certification discovery (such as information needed for notice, etc.) is subject to a separate discovery period, to which both sides agreed. *See* ECF No. 89 at 2. Plaintiffs claim above that they do not seek personally identifying class information; but in the context of seeking full production on RFP 22, they do. To the extent they are referring to the sampling framework the parties negotiated (which is what the Court should order), Google agrees that Plaintiffs have limited the data requested such that it is non-identifying.

***Remaining Issues.*** Google previously agreed, in writing on March 19, 2024, to provide a sampling of certain data for 50 putative class members.[2] On March 21, 2024, Plaintiffs responded with their 8-point counterproposal and unilaterally demanded a response five days later (which included a weekend). Google acknowledged receipt of this email, but could not comply with Plaintiffs' arbitrary timeline to substantively respond to each of the eight points, causing Plaintiffs

---

Plaintiffs additional time for discovery before class certification. Google has unquestionably participated in discovery in good faith and will continue to do so.

[2] Google notes that Plaintiffs' putative class, as currently defined, also includes users of the free edition of Google Apps that *did not* sign up for a paid Workspace subscription in 2022 and simply allowed their accounts to lapse. Second Amended Class Action Complaint ¶ 127 (ECF No. 56). To the extent Google has data on the former accounts belonging to these individuals at all it may differ from the data on individuals that did sign up for a Workspace subscription, provided a billing address, and have an ongoing Workspace account with Google.

to initiate this letter process.[3] Google has since provided additional assurances, largely agreeing to Plaintiffs' requests, except where doing so is not possible and Google has explained why.

As summarized at the end of their section, there are four remaining issues on which the parties appear to disagree. Google's responses and proposals on these issues are set forth below.

*First*, Plaintiffs suggest Google's proposal of letting them choose 50 putative class members from a set of 100 is unreasonable and allows Google too much control over the sample set. But providing Plaintiffs with a unique identifier for *all* of the thousands and thousands of putative class members, as Plaintiffs suggest, is not practicable. If Plaintiffs want a larger set than 100, Google can provide a larger set (e.g., 500) but it quickly erodes the benefits of sampling to provide data from the entire putative class. Plaintiffs do not explain why Google's subset approach is unworkable.

*Second*, Plaintiffs ask that Google stipulate that each piece of data provided for the sample class members is universally available from the unsampled class members. Google could never guarantee that the data is consistent across thousands of accounts without actually reviewing the data for each account; an unnecessary and unduly burdensome task that, again, quickly erodes the benefits of sampling in the first place. The idea behind the sampling is to give a general idea of what is, and what is not, available broadly. Google currently has no reason to expect the sample to be non-representative, but simply cannot make a promise that pertains to data it has not analyzed.

*Third*, on March 21, 2024, Plaintiffs requested that Google "not use the non-production of full class data at this stage to support any argument opposing class certification," and Google agreed to exactly that: Google will not use its own non-production of information to argue against certification. Now Plaintiffs have asked that Google *also* waive arguments about the *availability* of data. But, the availability of data is fair game for both sides. It may be that certain data is unavailable and that is shown by the sampling; if Plaintiffs can rely on the availability of data as reflected in the sample, certainly Google is entitled to do the same if data is unavailable.

*Fourth*, Plaintiffs ask that, if a class is certified, Google provide the identifying information within 30 days, rather than 60, as the schedule provides. *See* ECF No. 89 at 2. The parties specifically negotiated a 60-day period after certification for the purpose of class member discovery. There is no basis for Plaintiffs to unwind that deal as to this particular data. If Plaintiffs wanted more time for their expert to review the data they could easily have requested that. Google will comply with the scheduling order the parties negotiated.

What Google has offered satisfies Plaintiffs' need for data to support class certification while reasonably protecting information belonging to private individuals and reducing the burden of discovery. Plaintiffs and Google largely agree on this proposal and Plaintiffs are not entitled to more.

---

[3] At Plaintiffs' urging the parties recently agreed to extend the schedule; the Court recently extended the case schedule by five months such that Plaintiffs' motion for class certification is not due for nearly eight months (December 2, 2024) and fact discovery does not end for nearly another a year-and-a-half (September 18, 2025), at the earliest. ECF No. 89 at 1.

Respectfully submitted,

| COOLEY LLP | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
|---|---|
| By: */s/ Whitty Somvichian* | By: */s/ Roger N. Heller* |

Whitty Somvichian (194463)
(wsomvichian@cooley.com)
Kristine Forderer (278745)
(kforderer@cooley.com)
Sharon Song (313535)
(ssong@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Christopher M. Andrews
(*admitted pro hac vice*)
(candrews@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6862
Facsimile: (212) 479-6275

*Attorneys for Defendant Google LLC*

Roger N. Heller (215348)
rheller@lchb.com
Annie M. Wanless (339635)
awanless@lchb.com
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Fax: 415.956.1008

Daniel E. Seltz (admitted pro hac vice)
dseltz@lchb.com
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Fax: 212.355.9592

E. Adam Webb (admitted pro hac vice)
Adam@WebbLLC.com
G. Franklin Lemond, Jr. (admitted pro hac vice)
Franklin@WebbLLC.com
WEBB, KLASE & LEMOND, LLC
1900 The Exchange S.E., Suite 480
Atlanta, GA 30339
Telephone: 770.444.0773
Fax: 770.217.9950

*Attorneys for Plaintiffs*

2986943.1